Gail E. YOUNG, Administratrix of the Goods, Chattels and Credits of John A. Young, Deceased, and Gail E. Young, Individually, Plaintiff,

v.

**ROBERTSHAW CONTROLS COMPANY, Defendant.**

**No. 81–CV–1371.**

United States District Court, N.D. New York.

March 7, 1983.

---

DeGraff, Foy, Conway, Holt-Harris & Mealey, Albany, N.Y., for plaintiff; Frederick C. Riester, Albany, N.Y., of counsel.

Fischer, Hughes, Bessette & Edwards, Malone, N.Y., for defendant; Henry A. Fischer, Malone, N.Y., of counsel.

**MEMORANDUM–DECISION and ORDER**

MINER, District Judge.

## I

This action is brought pursuant to § 23 of the Consumer Product Safety Act, 15 U.S.C. § 2072,[1] to recover for the personal injuries and subsequent death of plaintiff's decedent. Jurisdiction in this Court is invoked pursuant to the provisions of Title 28 U.S.C. § 1331. Before the Court is defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, Fed.R. Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). Alternatively, defendant contends that punitive damages are not available in this action and seeks to limit plaintiff's recovery to compensatory damages only.

## II

On August 4, 1977, an explosion and fire occurred in the home of plaintiff's decedent, John Young. As a result, Mr. Young suffered extensive burns and died approximately two weeks later, survived by his wife (plaintiff) and three infant children. Plaintiff contends that the fire and explosion resulted from a defective water heater control device manufactured by defendant.

During the period 1955–1957, defendant (hereinafter "Robertshaw") manufactured several million of these water heater control devices ("Unitrols"). In 1957, and

---

1. 15 U.S.C. § 2072 provides:

(a) Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees (determined in accordance with section 2060(f) of this title) and reasonable expert witnesses' fees: *Provided,* That the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, unless such action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

(b) Except when express provision is made in a statute of the United States, in any case in which the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) The remedies provided for in this section shall be in addition to and not in lieu of any other remedies provided by common law or under Federal or State law.

again in 1960, Robertshaw effected certain design changes in the Unitrol controls, and, some time after 1957, Robertshaw attempted to modify those Unitrols actually produced during the 1955–1957 period. Plaintiff contends that Robertshaw made these design changes and modifications when it became apparent that the Unitrol controls were dangerously defective.[2]

By letter dated April 19, 1974, pursuant to the mandatory disclosure requirements of the Consumer Product Safety Act of 1972 (hereinafter "Act"), 15 U.S.C. § 2064,[3] Robertshaw informed the Consumer Product Safety Commission (hereinafter "Commission") of the potential hazards associated with the Unitrol controls. Specifically, Robertshaw informed the Commission that, "[a]fter May 14, 1973, [Robertshaw] has been informed of one fatality and one injury possibly connected with the potential product hazard." (Exhibit B to plaintiff's opposition to motion to dismiss, p. 2). Based upon this information, the Commission acquiesced in Robertshaw's proposed program to "locate the controls for inspection and modification or replacement at no cost to the consumer." (Id.)

Eventually, however, the Commission filed an administrative complaint[4] alleging that

Robertshaw knowingly and willfully filed inaccurate information with the Commission on April 18 and 19, 1974, and further, since the time of its notification, Robertshaw has failed to apprise the Commission of other incidents associated with the referenced controls, which incidents were known by Robertshaw to have involved severe personal injury or death and should have been made known to the Commission.

(Letter from David Schmeltzer to Joseph A. Howell, Jr.; Ex. C to plaintiff's opposition). The Commission further alleged that Robertshaw's failure to provide this information constituted a violation of § 19(a)(4) of the Act, 15 U.S.C. § 2068(a)(4).[5]

The parties herein do not dispute that a failure to disclose information pursuant to

---

**2.** According to Robertshaw,

[t]he potential product hazard arises only when the gas water heater control is abused or operating instructions are not followed and the interlock feature of the automatic safety valve is rendered inoperative. If this occurs and the automatic pilot fails unburned liquid petroleum gas may accumulate. If the accumulated gas is ignited explosions and fires result.

Letter dated April 19, 1974 from Joseph A. Howell to Director, Bureau of Compliance, Consumer Product Safety Commission.

**3.** 15 U.S.C. § 2064 provides in part:

(a) For purposes of this section, the term "substantial product hazard" means—

(1) a failure to comply with an applicable consumer product safety rule which creates a substantial risk of injury to the public, or

(2) a product defect which (because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk, or otherwise) creates a substantial risk of injury to the public.

(b) Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product—

(1) fails to comply with an applicable consumer product safety rule; or

(2) contains a defect which could create a substantial product hazard described in subsection (a)(2) of this section, shall immediately inform the Commission of such failure to comply or of such defect, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect or failure to comply.

**4.** This complaint was filed in

an Adjudicative Proceeding under the Consumer Product Safety Commission ("Commission") Rules of Practice for Adjudicative Proceedings, 16 C.F.R. 1025, for the assessment of a civil penalty against Robertshaw Controls Company ("Robertshaw" or "Respondent") in the sum of five hundred thousand dollars ($500,000) pursuant to section 20 of the Consumer Product Safety Act ("the Act" or "CPSA"), 15 U.S.C. 2051, 2069.

*In the Matter of Robertshaw Controls Company, a corporation,* CPSC Docket No. 82–3, (June 18, 1982), Complaint, ¶ 1. This Court has not been informed of the outcome of this civil proceeding.

**5.** 15 U.S.C. § 2068 provides in part:

Prohibited acts

(a) It shall be unlawful for any person to—

.    .    .    .    .

(4) fail to furnish information required by section 2064(b) of this title. . . .

§ 2068(a)(4) entitles the Commission to recover civil penalties from the violator. 15 U.S.C. § 2069.[6] However, defendant contends that a failure to disclose information in accordance with the Commission's regulations does not entitle a private party to maintain a civil action against the recalcitrant manufacturer. In support of this contention, defendant argues that the seemingly broad language of § 2072 is not intended to encompass the violation of a mere disclosure rule of the Commission. Defendant also contends that, since the Commission has been empowered expressly to impose penalties on a non-disclosing manufacturer, a comparable right should not be implied on behalf of an injured consumer. Finally, defendant argues that to allow a private action against a manufacturer before the Commission determines that the manufacturer's product contains a defect which creates a substantial product hazard is a denial of the manufacturer's right to due process of law.

In contrast, plaintiff argues that the language of § 2072 should be given its plain meaning. Moreover, plaintiff argues that her decedent's death could have been prevented had Robertshaw promptly provided full and accurate information to the Commission. More specifically, plaintiff contends that the Commission would have instituted more effective measures to protect the public against injury had it been aware of the true extent of the dangers presented by the Unitrol controls. According to plaintiff, this is exactly the type of situation which Congress intended to prevent when it enacted § 2072.

### III

The Consumer Product Safety Act of 1972, 15 U.S.C. §§ 2051–2083, was passed, in part, to "protect the public against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051(b). The Act also established the Consumer

---

**6.** 15 U.S.C. § 2069 provides:

(a)(1) Any person who knowingly violates section 2068 of this title shall be subject to a civil penalty not to exceed $2,000 for each such violation. Subject to paragraph (2), a violation of section 2068(a)(1), (2), (4), (5), (6), (7), (8), (9), or (10) of this title shall constitute a separate offense with respect to each consumer product involved, except that the maximum civil penalty shall not exceed $500,000 for any related series of violations. A violation of section 2068(a)(3) of this title shall constitute a separate violation with respect to each failure or refusal to allow or perform an act required thereby; and, if such violation is a continuing one, each day of such violation shall constitute a separate offense, except that the maximum civil penalty shall not exceed $500,000 for any related series of violations.

(2) The second sentence of paragraph (1) of this subsection shall not apply to violations of paragraph (1) or (2) of section 2068(a) of this title—

(A) if the person who violated such paragraphs is not the manufacturer or private labeler or a distributor of the products involved, and

(B) if such person did not have either (i) actual knowledge that his distribution or sale of the product violated such paragraphs or (ii) notice from the Commission that such distribution or sale would be a violation of such paragraphs.

(b) In determining the amount of any penalty to be sought upon commencing an action seeking to assess a penalty for a violation of section 2068(a) of this title, the Commission shall consider the nature of the product defect, the severity of the risk of injury, the occurrence or absence of injury, the number of defective products distributed, and the appropriateness of such penalty in relation to the size of the business of the person charged.

(c) Any civil penalty under this section may be compromised by the Commission. In determining the amount of such penalty or whether it should be remitted or mitigated and in what amount, the Commission shall consider the appropriateness of such penalty to the size of the business of the person charged, the nature of the product defect, the severity of the risk of injury, the occurrence or absence of injury, and the number of defective products distributed. The amount of such penalty when finally determined, or the amount agreed on compromise, may be deducted from any sums owing by the United States to the person charged.

(d) As used in the first sentence of subsection (a)(1) of this section, the term "knowingly" means (1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations.

Product Safety Commission, and granted the Commission broad powers to achieve the Act's underlying objectives. *See, e.g.,* 15 U.S.C. §§ 2053, 2054, and 2056. In carrying out its statutory duties,

> the Commission has issued rules which, for purposes of this case, may broadly be classified into two major categories: 'consumer product safety rules' and administrative rules. The former is comprised of rules promulgated in order to halt or restrict the sale or manufacture of consumer products deemed unreasonably dangerous to the public. . . .
>
> The other major category of rules comprises regulations promulgated in order to facilitate the administration of the [Commission] and its statutory duties.

*Butcher v. Robertshaw Controls Co.,* 550 F.Supp. 692 at 695 (D.Md.1981).

Title 15 U.S.C. § 2064 provides that a manufacturer who obtains information indicating that its product contains a defect which could create a "substantial product hazard" must disclose that information to the Commission. The Commission's regulations, found at 16 C.F.R. Part 1115,[7] interpret and implement this statutory provision and reiterate the manufacturer's duty of disclosure. 15 U.S.C. § 2072 provides, in part:

> (a) Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safe-

ty rule, *or any other rule or order issued by the Commission* may sue any person who knowingly (including willfully) violated any such rule or order. . . . (emphasis supplied).

■ The Supreme Court, in construing another section of the Consumer Product Safety Act, has stated, "[w]e begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Here, § 2072 is expressed in clear and unequivocal terms. A private damage remedy is available to one who sustains injury by reason of a violation of a consumer product safety rule, "or any other rule or order issued by the Commission." Defendant's contention that the violation of a disclosure rule does not entitle plaintiff to maintain a private action to recover damages for the injuries to her decedent flies in the face of this unambiguous language. Having examined the Act's legislative history, *see, e.g.,* 1972 U.S.Code Cong. & Ad.News, p. 4573, et seq., and finding no indication to the contrary, this Court determines that the statutory language must be regarded as conclusive.[8]

---

**7.** For example, 16 C.F.R. § 1115.1 provides:
> The purpose of this Part 1115 is to set forth the Consumer Product Safety Commission's (Commission's) interpretation of the reporting requirements imposed on manufacturers (including importers), distributors, and retailers by section 15(b) of the Consumer Product Safety Act, as amended (CPSA) (15 U.S.C. 2064(b)) and to indicate the actions and sanctions which the Commission may require or impose to protect the public from substantial product hazards, as that term is defined in section 15(a) of the CPSA.

16 C.F.R. § 1115.10 provides, in part:
> (a) Every manufacturer (including importer), distributor, or retailer of a consumer product that has been distributed in commerce who obtains information that such consumer product contains a defect which could create a substantial risk of injury to the public shall immediately notify the Product Defect Correction Division, Consumer Prod-

uct Safety Commission, Washington, D.C. 20207 (telephone: 301–492–6608), or such other persons as may be designated. Manufacturers (including importers), distributors, and retailers of consumer products subject to regulation by the Commission under provisions of the FFA, FHSA, PPPA, as well as consumer products subject to regulation under the CPSA and RSA, must comply with this requirement.

**8.** Defendant's contention that 16 C.F.R. § 1115, an "interpretive" rule, is not a "rule" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551, et seq. (Supplemental Memorandum of Law Number One, p. 10), is wholly without merit. Title 5 U.S.C. § 551(4) provides:
> "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or

Defendant's reliance on *Riegel Textile Corp. v. Celanese Corp.,* 493 F.Supp. 511 (S.D.N.Y.1980), *affirmed,* 649 F.2d 894 (2d Cir.1981), for a contrary result is misplaced. Unlike the situation at bar, *Riegel* involved the Federal Hazardous Substances Act, 15 U.S.C. § 1261, et seq. (FHSA). Moreover, plaintiff there sought to have a private cause of action *implied*[9] under the FHSA. In deciding that plaintiff could not rely, by analogy, on the provisions of § 2072, the district court stated:

The private damage remedy provisions of the related Consumer Product Safety Act are also inapplicable by their terms. *The cause of action created by Section 2072 does not arise in the absence of valid regulatory action by the Commission under the Consumer Product Safety Act.* In the case of Tris-treated garments and fiber, the Commission has issued no regulations under the Consumer Product Safety Act (and is, in fact, required to proceed by means of the Federal Hazardous Substances Act rather than the Consumer Product Safety Act unless it finds good reason not to do so). Further, once the initial Tris regulations which the Commission had issued under the Federal Hazardous Substances Act were found to be without effect, see *Springs Mills [Inc. v. Consumer Product Safety Commission,* 434 F.Supp. 416 (D.C.S.C.1977) ], *supra,* the Commission indicated that it would proceed by individual enforcement action rather than by regulation under the Hazardous Substances Act, so that Section 2072 cannot be applied by analogy to create a private cause of action for violation of Commission regulations governing Tris-treated objects. Moreover, Section 2072's provisions have been construed to limit the available private cause of action

under that section to actions brought by members of the consuming public, excluding actions brought by one manufacturer against a fellow manufacturer. *Plaskolite, Inc. v. Baxt Industries, Inc.,* 486 F.Supp. 213 (N.D.Ga., 1980). (emphasis supplied).

*Riegel Textile Corp. v. Celanese Corp., supra,* 493 F.Supp. at 518.

Although the language employed by the district court in *Riegel* is susceptible to an interpretation which would require the promulgation of a specific product-oriented rule before a consumer could bring suit pursuant to the provisions of § 2072, this Court does not find that such an interpretation is warranted. Moreover, the district court in *Riegel,* relying on *Plaskolite, Inc. v. Baxt Industries, Inc., supra,* indicated that, as a manufacturer and not a consumer, Riegel would not be able to rely on the provisions of § 2072. Finally, it is apparent that the *Riegel* courts were not faced with the question now before this Court. Clearly, then, *Riegel* is not dispositive of the issue at bar. *See Butcher v. Robertshaw Controls Co., supra,* 550 F.Supp. at 700.

Defendant also contends that the statutory scheme here belies any intention to provide a private damage remedy for the violation of a disclosure rule. Specifically, defendant correctly notes that the failure to disclose information is a "prohibited act" within the meaning of 15 U.S.C. § 2068, and the Commission can seek civil penalties for such a failure to act. 15 U.S.C. § 2069. Therefore, defendant concludes, having provided a remedy for the Commission under these circumstances, Congress must have intended to preclude any private remedy for a manufacturer's having failed to disclose. This argument begs the question

describing the organization, procedure, or practice requirements of an agency ....
"The breadth of this definition cannot be gainsaid." *Batterton v. Marshall,* 648 F.2d 694, 700 (D.C.Cir.1980). Clearly, an "interpretive rule," like the disclosure requirement here, is a rule within the meaning of the APA. Moreover, as indicated above, there is no indication in the language of § 2072 that interpretive rules were intended to be excluded from the operation of

that section's provisions. This Court, therefore, is still not persuaded that § 2072 should be construed in the restrictive manner suggested by defendant.

**9.** By contrast, plaintiff in the case at bar is not seeking to imply a cause of action under § 2072. It is plaintiff's contention that § 2072, by its express terms, provides her with a private remedy.

whether § 2072 was intended to provide a private cause of action, and like defendant's argument above, ignores the express language of the statute. Accordingly, this Court finds no reason to emasculate the provisions of § 2072 simply because the Commission, as well as a private consumer, has been furnished a remedy for a manufacturer's failure to disclose information.[10]

■ Finally, defendant argues that to allow a jury to conclude that Robertshaw has violated the Commission's regulations before the Commission determines that the Unitrol controls do, in fact, present a substantial product safety hazard is a denial to defendant of due process of law. Again, defendant misses the point. Here, a jury will be called upon to evaluate the information which defendant allegedly failed to disclose to the Commission, and not to determine whether the Unitrols do present a substantial product hazard. Clearly, this latter determination has been left to the Commission. 15 U.S.C. § 2064. Therefore, this Court finds no deprivation of Robertshaw's due process rights in allowing this action to proceed, and defendant's motion to dismiss the complaint must be denied.

■ With respect to plaintiff's claim for damages, it appears that punitive damages are not recoverable in a consumer's action brought pursuant to 15 U.S.C. § 2072. Addressing this issue, the District Court for the Eastern District of New York concluded that "the measure of recovery under the [Consumer Product Safety Act] is a function of state rather than federal law." *Wahba v. H & N Prescription Center, Inc.,* 539 F.Supp. 352, 354 (E.D.N.Y.1982). This Court agrees. Moreover, the law of New York State is clear: punitive "damages are not recoverable under New York law in either wrongful death, N.Y.Est.Powers & Trusts Law §§ 5–4.1, 5–4.3; *Robert v. Ford*

*Motor Co.,* 73 A.D.2d 1025, 424 N.Y.S.2d 747 (3d Dep't 1980), or survival actions, N.Y. Est.Powers & Trusts Law § 11–3.2; *Rosenfeld v. Isaacs,* 79 A.D.2d 630, 433 N.Y.S.2d 623 (2d Dep't 1980)." *Wahba v. H & N Prescription Center, Inc., supra,* 539 F.Supp. at 353; *accord, Butcher v. Robertshaw Controls Co.,* No. B–81–72 (D.Md. Nov. 3, 1982). Therefore, plaintiff's potential recovery in this action must be limited to compensatory damages only.[11]

## IV

Accordingly, for the reasons mentioned above, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), or for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), is denied. However, defendant's request to limit plaintiff's recovery under the Consumer Product Safety Act to compensatory damages only is granted.

It is so Ordered.

---

10. Defendant likewise contends that the availability of injunctive relief to private parties, *see* 15 U.S.C. § 2073, precludes a private damage remedy pursuant to § 2072. This argument must fail for the same reasons.

11. It appears that a wrongful death action involving the parties herein is now pending in the courts of New York State. Should plaintiff

recover damages in that state court proceeding for the death of her decedent, a double recovery would not be available in the instant proceeding. *Butcher v. Robertshaw Controls Co.,* No. B–81–72 (D.Md. Nov. 3, 1982), relying in part on *Wahba v. H & N Prescription Center, Inc., supra.*