Vicki Lynn DRAKE, et al., Appellees,

v.

HONEYWELL, INC., Appellant,

v.

WAGONER WATER HEATER CO., INC., Appellee.

No. 85–5179.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1985.

Decided July 23, 1986.

Rehearing Denied Aug. 28, 1986.

Scott W. Johnson, Minneapolis, Minn., for appellant.

Stanley E. Karon, St. Paul, Minn., for appellees.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and McMANUS,* District Judge.

JOHN R. GIBSON, Circuit Judge.

The question presented is whether section 23(a) of the Consumer Product Safety Act, 15 U.S.C. § 2072(a) (1982), creates a private cause of action for an injury resulting from noncompliance with the product hazard reporting rules issued by the Consumer Product Safety Commission. We conclude that it does not, and therefore reverse the judgment of the district court.

## I.

Vicki Lynn Drake commenced this action to recover damages for personal injuries sustained in the explosion of a liquid propane gas water heater. Drake claims that the accident was caused by a design defect in the water heater control knob designed by Honeywell. She asserts common law products liability theories of relief against Honeywell including negligence, breach of warranty, and strict liability in tort.

These state law claims come to this forum pendent to a federal claim predicated upon a private cause of action under section 23(a) of the Consumer Product Safety Act, 15 U.S.C. § 2072(a) (1982). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Section 23(a) of the Act vests a private cause of action for damages in any person who is injured by virtue of a knowing violation of a "consumer product safety rule, or any other rule or order" issued by the Consumer Product Safety Commission, and provides attorney fees to the prevailing plaintiff.[1] It is significant that a section 23(a) private cause of action arises from a rule violation only. Section 23(a) does not allow a private action for violations of the statute itself. Section 15(b) of the Act, 15 U.S.C. § 2064(b) (1982), requires a manufacturer, distributor, or retailer who obtains information that reasonably supports the conclusion that its product contains a defect which could create a substantial product hazard to notify the Commission of the product defect.[2] The Commission, at 16

---

* The HONORABLE EDWARD J. McMANUS, Senior United States District Judge for the Northern District of Iowa, sitting by designation.

1. Section 23(a) reads in pertinent part:
   Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees * * *.

2. Section 15(b) reads in pertinent part:
   Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains

C.F.R. Part 1115 (1985), has promulgated rules which elaborate on the statutory reporting requirement. These rules specify, among other things, who must report to the Commission, *id.* § 1115.10; what information must be reported, *id.* § 1115.12; the form the reports must take, *id.* § 1115.13; and the timetable for reporting, *id.* § 1115.-14.

Drake claims that before the explosion which caused her injuries occurred, Honeywell had learned that the water heater control knob contained a defect which could create a substantial product hazard. She asserts that Honeywell should have reported the information to the Commission as prescribed by the rules at 16 C.F.R. Part 1115. Honeywell's failure to comply with the reporting rules, she concludes, constitutes a violation of a rule issued by the Commission and gives rise to a private cause of action under section 23(a). She seeks recovery on the theory that had Honeywell reported the information in accordance with the Commission's rules, the defect would have been cured or the water heater removed from the market and her injury prevented.

Honeywell moved the district court to dismiss the federal claim. It argued that a private cause of action cannot arise from noncompliance with the reporting rules at 16 C.F.R. Part 1115 because these are not the kind of rules that Congress intended to be enforced by the section 23(a) private mechanism. According to Honeywell, the purpose of 16 C.F.R. Part 1115 is merely to set forth the Commission's interpretation of the reporting requirements imposed by Congress under section 15(b) of the Act, to provide guidance to those whose conduct may be governed by the statute. They are interpretive rules, not legislative or substantive rules. They do not establish legally enforceable obligations and therefore cannot be violated. Honeywell thus concludes that Drake's claim, boiled down, is predicated not upon a violation of the rules issued pursuant to section 15(b), but upon a violation of section 15(b) itself. Section 23(a), however, is plain that only a rule violation is subject to private enforcement. A violation of the statute, Honeywell concedes, can be prosecuted by the Commission and punished with fines, injunction, or imprisonment. It does not, however, give rise to a private cause of action.

The district court denied Honeywell's motion to dismiss. *Drake v. Lochinvar Water Heater, Inc.,* 618 F.Supp. 549 (D.Minn. 1985). The court acknowledged that the word "rule" is not defined in the Act. However, focusing on the plain meaning of "rule," the district court concluded that the product hazard reporting rules issued by the Commission, even if interpretive rules, are plainly "rules" within the meaning of section 23(a). Thus, the court held that a private action can be maintained against Honeywell for its alleged violation of 16 C.F.R. Part 1115. The district court later amended its order to certify the issue for interlocutory review and this appeal followed.

## II.

Section 23(a) by its terms permits a private cause of action for the violation of "a consumer product safety rule, or any other rule or order" issued by the Commission. The Act defines "consumer product safety rule," 15 U.S.C. § 2052(a)(2), but does not define the scope of the "other rule" provision. Nonetheless, the reporting rules issued by the Commission, whether legislative or interpretive, are patently within the plain meaning of the word "rule." Therefore, it would appear from the language of section 23(a) that a failure to comply with

---

information which reasonably supports the conclusion that such product—
    \*    \*    \*    \*    \*    \*
   (2) contains a defect which could create a substantial product hazard \* \* \*

shall immediately inform the Commission \* \* of such defect, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect \* \* \*.

the reporting rules gives rise to a private cause of action.[3]

■ Our investigation, however, only starts with the statutory language. The question whether a statute permits a private right of action is ultimately one of congressional intent. *Universities Research Association, Inc. v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981). " '[A] thing may be within the letter of the statute and yet not within the statute, because not within its spirit, or within the intention of its makers.' " *United Steelworkers of America v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979) (quoting *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)). To discover that intention we must not fix on a single word or sentence, but must examine the law as a whole. *Panama Refining Co. v. Ryan,* 293 U.S. 388, 439, 555 S.Ct. 241, 256, 79 L.Ed. 446 (1935) (Cardozo, J., dissenting). While section 23(a) states that a private action may flow from a violation of a rule, it does not similarly provide for private actions based on a violation of the statute itself. Ordinarily, when a federal statute explicitly creates a private cause of action, it does so for violations of its own provisions, not just for violations of rules that may be issued pursuant to those provisions. This approach was taken, for example, in a similarly comprehensive consumer protection statute enacted just four years earlier, the Consumer Credit Protection Act, 15 U.S.C. §§ 1601–93 (1982 & West Supp.1986). *See* 15 U.S.C. § 1640(a) (1982) (permitting private action against any creditor who fails to comply with any part of the statute). From this obvious and unambiguous omission, we must conclude that Congress intentionally withheld from private persons the right to seek damages based on an injury resulting from a violation of the statute.

■ Section 15(b) of the statute, specifically requires reporting of substantial product hazards. Violation of section 15(b) cannot be prosecuted by private action. The trouble with applying the plain meaning of "rule" to the Commission's substantial product hazard reporting rules, then, is that such a reading effectively renders privately enforceable the reporting requirement contained in section 15(b) of the statute. This would seem to frustrate the congressional intent, expressed by the omission of section 23(a), to deny a private cause of action to those injured from a violation of the statute itself. Thus, from a view of the Act as a whole, we would conclude that despite the plain meaning of "rule," failure to comply with the Commission's reporting rules does not give rise to a private cause of action.[4]

### III.

■ Our conclusion, that Congress did not intend a section 23(a) private action to arise from noncompliance with the Commission's reporting rules, is reinforced when the problem is viewed through the lens of well-settled principles of administrative law. The Constitution, of course, does not

---

**3.** The "plain meaning" construction has been used by several district courts to support a private cause of action. *See, e.g., Wilson v. Robertshaw Controls Co.,* 600 F.Supp. 671, 675 (N.D. Ind.1985); *Payne v. A.O. Smith Corp.,* 578 F.Supp. 733, 738 (S.D.Ohio 1983); *Young v. Robertshaw Controls Co.,* 560 F.Supp. 288, 292–93 (N.D.N.Y.1983); *Butcher v. Robertshaw Controls Co.,* 550 F.Supp. 692, 698–99 (D.Md.1981). It also was relied upon by the Minnesota Supreme Court in *Swenson v. Emerson Electric Co.,* 374 N.W.2d 690 (Minn.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986), to reach the identical conclusion.

**4.** The court in *Butcher v. Robertshaw Controls Co.,* 550 F.Supp. at 692, observed that § 24 of

the Act, 15 U.S.C. § 2073 (1982), grants "[a]ny interested person" the right to enforce a consumer product safety rule or § 15 order. Comparing § 24 to § 23(a), the court reasoned that to deny the private action for violation of the reporting rules would render the "any other rule" language of § 23(a) superfluous. We disagree. First, § 24 limits the available remedy to injunctive relief; damages are not available. Second, the "any other rule" provision encompasses rules, in addition to consumer product safety rules, which the Act authorizes the Commission to issue. *See infra,* note 6. Therefore, our conclusion would not strip the "any other rule" provision of purpose.

explicitly recognize federal administrative rulemaking authority. Rather, the power to make law resides with the Congress, and administrative agencies may make rules enforceable as law only when that power exclusive to the legislature is properly delegated by statute. *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 398, 60 S.Ct. 907, 914, 84 L.Ed. 1263 (1940). Rules enacted by an administrative agency pursuant to statutory delegation, called substantive or legislative rules, must be judicially enforced as if laws enacted by Congress itself. *Batterton v. Francis,* 432 U.S. 416, 425 & n. 9, 97 S.Ct. 2399, 2405 & n. 9, 53 L.Ed.2d 448 (1977); *United States v. Mersky,* 361 U.S. 431, 437–38, 80 S.Ct. 459, 463, 4 L.Ed.2d 423 (1960). Rules not enacted pursuant to an explicit statutory delegation of lawmaking power, called interpretive rules, are issued merely to provide guidance to parties whose conduct may be governed by the underlying statute, and to courts which must construe it. They "carry no more weight on judicial review than their inherent persuasiveness commands." *Batterton v. Marshall,* 648 F.2d 694, 702 (D.C.Cir.1980). They cannot be independently enforced as law. *General Electric Co. v. Gilbert,* 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

As a consequence of this distinction, while an administrative agency delegated legislative power may sue to enforce its legislative rule, just as it may sue to enforce a statute, it cannot ground legal action in a violation of its interpretive rule. Rather, the agency must demonstrate to the court that no mere interpretive rule, but the underlying statute, has been violated. Certainly a court should give great weight to an agency's interpretation, as reflected in its interpretive rule, of the

statute it administers, to determine the scope of the statute and whether it has been violated. *See, e.g., Skidmore v. Swift & Co.,* 323 U.S. at 140, 65 S.Ct. at 164. But clearly, a claim of conduct inconsistent with an interpretive rule is advanced only to show that the statute itself has been violated. An action based on a violation of an interpretive rule does not state a legal claim. Being in nature hortatory, rather than mandatory, interpretive rules never can be violated. *See generally* 2 K. Davis, *Administrative Law Treatise,* §§ 7.8–.11 (2d ed. 1979); B. Schwartz, *Administrative Law,* §§ 4.6–.7 (2d ed. 1982).

The Commission's reporting rules are plainly interpretive rules.[5] First, the Commission has explained that the purpose of the 16 C.F.R. Part 1115 rules is to "set forth the * * * Commission's interpretation of the reporting requirements imposed on manufacturers * * * by section 15(b)." 16 C.F.R. § 1115.1. This description summarizes the position taken upon publication of the final version of the reporting rules, when the Commission flatly stated that it had "promulgate[d] the rule[s] as interpretive." 43 Fed.Reg. at 34990. The Commission continues to hold this view. *See* 49 Fed.Reg. 13820 (1984). The Commission's characterization of its rule, while not dispositive, is entitled to deference. *See Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11 n. 15, 100 S.Ct. 883, 890 n. 15, 63 L.Ed.2d 154 (1980); *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C. Cir.1984) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). Second, it is evident from the face of the Act that Congress did not delegate to the Commission legislative authority under section 15(b). Unlike legislation authorizing the enforcement activity of some agencies, such as the Federal Trade Commission Act,

---

**5.** Among courts which have considered this problem, there is little disagreement on this point. The reporting rules have been deemed interpretive both by courts permitting the private action, *see Wilson v. Robertshaw Controls Co.,* 600 F.Supp. at 675–76; *Young v. Robertshaw Controls Co.,* 560 F.Supp. at 292–93 n. 8; *Butcher v. Robertshaw Controls Co.,* 550 F.2d at

695; *Swenson v. Emerson Electric Co.,* 374 N.W.2d at 698 n. 2, and by courts rejecting it, *see Kahn v. Sears, Roebuck & Co.,* 607 F.Supp. 957, 958 (N.D.Ga.1985); *Morris v. Coleco Industries,* 587 F.Supp. 8, 10 (E.D.Va.1984). Only one court reaching this question has been reluctant to conclude that the rules are interpretive. *See Payne v. A.O. Smith Corp.,* 578 F.Supp. at 738.

15 U.S.C. §§ 41–77 (1982 & West Supp. 1986) (granting FTC the power to "make rules and regulations for the purpose of carrying out the provisions of this [Act]," 15 U.S.C. § 46(g) (West Supp.1986)), the Act does not contain general enabling language delegating to the Commission the authority to promulgate rules which carry the force of statute. Rather, Congress delegated such power to the Commission only under specific sections of the Act.[6] No such specific delegation is present in section 15(b). Therefore, even if it so chose, the Commission is powerless to issue legislative rules under section 15(b).[7] Thus, the product hazard reporting rules issued by the Commission at 16 C.F.R. Part 1115 can only be interpretive rules.[8]

Because the reporting rules, as interpretive rules, merely present the Commission's interpretation of the statute, but are not themselves law, Drake's claim that Honeywell violated 16 C.F.R. Part 1115 when it failed to report really amounts to a claim that Honeywell violated section 15(b) of the Act. Drake's response, that noncompliance with the Commission's reporting rules is unlawful if the rules reasonably construe the Act, is correct but beside the point. It well may be that a court would deem the Commission's reporting rules a reasonable interpretation of section 15(b),[9] and thus conclude that the failure to comply with them constitutes a violation of the Act. The charge before us, however, is not that Honeywell's alleged failure to report vio-

6. Legislative authority is granted, for example, to issue consumer product safety standards, 15 U.S.C. § 2056(a) (1982); to ban hazardous products, 15 U.S.C. § 2057 (1982); to regulate stockpiling of products to which a consumer product safety rule applies, 15 U.S.C. § 2058(g)(2) (1982); to prescribe testing programs for certain consumer products, 15 U.S.C. § 2063(b) (1982); to prescribe specific kinds of labeling requirements, 15 U.S.C. § 2063(c) (1982); to require certain kinds of recordkeeping by manufacturers, 15 U.S.C. § 2065(b) (1982); and to require submission of performance and technical data, 15 U.S.C. § 2076(e) (1982). Where the Commission issues rules under these provisions and explicitly states that it intends to exercise the authority delegated by Congress, the resulting rules are legislative, and their violation gives rise to a private cause of action under section 23(a).

7. It is true, as Drake argues, that in issuing the reporting rules, the Commission employed the APA notice and comment provisions required when issuing legislative rules. See 5 U.S.C. § 553 (1982). Yet, as the Commission noted, it employed the APA procedures not out of duty, but for administrative convenience. See 40 Fed. Reg. 30936 (1974) (The Commission's "solicitation of public comment is not required by law and should be considered as having no precedential value."). Moreover, the Commission, even if it so intended, obviously cannot assume authority not specifically delegated merely by employing procedures appurtenant to that authority.

8. Drake argues that the Commission is empowered to issue reporting rules with legislative effect under the authorization contained in section 27(e) of the Act, 15 U.S.C. § 2076(e), entitled "Performance and technical data." Section

27(a) authorizes the Commission to, "by rule require any manufacturer of consumer products to provide to the Commission such performance and technical data related to performance and safety as may be required to carry out the purposes of this chapter * * *." A similar argument could be made with regard to section 16(b) of the Act, 15 U.S.C. § 2065(b), which concerns "recordkeeping," and which provides: "Every * * * manufacturer * * * shall establish and maintain such records, make such reports, and provide such information as the Commission may, by rule, require for the purposes of implementing this chapter, or to determine compliance with rules or orders prescribed under this chapter." This argument derives its force from the fact that, in the "Authority" paragraph of 16 C.F.R. Part 1115, the Commission notes that the issuance comes pursuant to a multitude of sections of the Act, including sections 27 and 16, both of which contain legislative rulemaking grants. We have some question whether the reporting rules are of the type Congress intended the Commission to issue pursuant to the delegations of sections 27(e) and 16(b). Nonetheless, it is a question we need not resolve. We believe it clear from the text of 16 C.F.R. Part 1115, viewed as a whole, and from the numerous references made therein to section 15(b) of the Act, see, e.g., § 1115.1, that the Commission in fact issued the reporting rules under section 15(b), which contains no legislative rulemaking grant. Whether the Commission could have issued reporting rules under sections 27(e) or 16(b) is not before us.

9. See Swenson v. Emerson Electric Co., 374 N.W.2d at 703–05 (concluding that the Commission's reporting rules constitute "a reasonable interpretation of [the Act] in light of the language of the disclosure provision and the structure and purposes of [the Act].").

lates the Act, but that it violates a rule. It is precisely because the Commission's reporting rules, as interpretive rules, are derivative rather than independent of the section 15(b) reporting requirement, that they cannot be violated, but can only signal a violation of section 15(b) itself. Congress made clear, however, that no private action may flow from a violation of the Act. Therefore, a section 23(a) private cause of action cannot arise from an injury resulting from noncompliance with the product hazard reporting rules issued by the Commission.

## IV.

A study of the legislative history of section 23(a) does not reveal any congressional intent to permit private enforcement of the Commission's reporting rules. The original House version of section 23(a) limited the private right to suits based on death, injury, or illness resulting from the failure of a consumer product to comply with a consumer product safety rule, or "failure to comply with an order under section 15(c) or section 15(d)." H.R. 15003, 92d Cong., 2d Sess. § 23(a)(2), 118 *Cong.Rec.* 31409 (1972). Sections 15(c) and (d) of the Act authorize the Commission, after providing APA notice and hearing, *see* 5 U.S.C. § 554 (1982 & West Supp.1986), and determining that a substantial product hazard exists, to require those responsible for the hazard to notify the public and to repair or replace the hazardous consumer product, or refund the purchase price. 15 U.S.C. §§ 2064(c), (d). No mention is made in the original House version of section 23(a) of private actions based on noncompliance with Commission rules issued under section 15(b).

The report of the House Committee on Interstate and Foreign Commerce accompanying the bill similarly refers only to orders under sections 15(c) and (d) in discussing private enforcement of consumer product safety rules and Commission action taken under section 15.[10]

The conspicuous absence of reference to rules issued under section 15(b) in the original bill and the accompanying discussion of private actions alone demonstrates that the House, initially at least, did not contemplate a private action arising from a violation of reporting rules issued by the Commission. It becomes clear that the omission was intended when we consider the bill in its greater administrative law context. Like consumer product safety rules, orders under section 15(c) and (d) were expressly authorized in the bill. They therefore were given legislative effect; the Commission was empowered to issue them and to prosecute their violation. The bill, however, did not similarly grant the Commission rulemaking power, and the associated enforcement power, under section 15(b). It is unlikely that the House meant to give private persons greater enforcement power than the Commission itself. *Cf. J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964) (purpose of creating private action is to supplement agency enforcement).

The Senate version of section 23(a) appears broader, allowing a private cause of action for violation of a "consumer product safety standard, regulation, or order." S. 3419, 92d Cong., 2d Sess. § 316(d)(2), 118 *Cong.Rec.* 21911 (1972). Significantly, however, the list in the Senate bill of "prohibited acts" subject to Commission en-

**10.** The report explains:

> Section 23 provides a private remedy for damages to persons injured by reason of noncompliance with certain provisions of the bill * * *. [I]f a person dies or sustains personal injury or illness by reason of a failure to comply with an order under section 15(c) or section 15(d) (relating to notification respecting, and repair, etc., of products presenting substantial product hazards), then he * * * may sue any person who failed to comply with such order under section 15, and may recover any damages sustained as a result of such failure to comply.
>
> The Committee anticipates, in cases in which it is established that death, personal injury or illness occurred by reason of noncompliance with the consumer product safety rule or section 15 order, that the courts will in general apply State law as to questions of which types of damages may be recovered * * *.

H.R.Rep. No. 1153, 92d Cong., 2d Sess. 47–48 (1972).

forcement did not include violations of the reporting requirements of section 313, the predecessor to section 15 of the Act, but only covered any "fail[ure] or refus[al] to comply with an *order* of the Commission pursuant to section 313." S. 3419, 92d Cong., 2d Sess. § 315(2) (1972), 118 *Cong. Rec.* 21910–11 (1972) (emphasis added). Again, there is no reference to enforcement, either by the Commission or private persons, of reporting rules issued by the Commission.

The enacted version of section 23(a), fashioned by the Conference Committee, and containing the "any other rule" language, appears broader still. However, significantly lacking from the congressional reports and debates is any discussion of the new language. Certainly there is no intent expressed to extend the scope of the private right of action beyond that established in the House bill and Senate revision. Indeed, the legislative history is void of any suggestion that Congress intended to provide a private remedy for noncompliance with Commission rules issued pursuant to the section 15(b) reporting requirement. The legislative history of section 23(a) at best presents conflicting intentions. We cannot on this basis conclude that Congress intended a private cause of action for an injury resulting from noncompliance with the product hazard reporting rules issued by the Commission.[11]

### V.

The practical consequences of advancing a private cause of action based on the Commission's reporting rules confirms our view that Congress did not intend to create such a right. Claims based on personal injury caused by defective products are readily pursued in most states under a theory of strict liability in tort. To recover in strict liability, the plaintiff need show only that the defendant's product contained an unreasonably dangerous defect which caused plaintiff's injury. *See Restatement (Second) of Torts* § 402(a) (1965). The plaintiff need not prove the defendant knew the product was defective, and proof of causation is relatively direct. On the other hand, were we to approve a section 23(a) action brought for violation of the reporting rules issued by the Commission, a much greater showing would be demanded. First, the plaintiff would have to show that the defendant "knowingly" violated the reporting rules. Second, the plaintiff would have to show that but for the violation, the injury would have been prevented. In essence, the plaintiff would have to prove that had the defendant reported in accordance with 16 C.F.R. Part 1115, the Commission pursuant to sections 15(c) and (d) would have held a hearing, determined that the product in fact contained a defect which presented a substantial product hazard, and ordered a remedy that would have prevented the plaintiff's injury. The causation problem not only burdens the plaintiff, it also strains the judicial factfinding process. It requires speculation as to whether and how the Commission would have responded to the defendant's report, and whether the Commission's response would have succeeded in preventing the plaintiff's injury.[12] We doubt that Congress intended to set such a tortuous process in motion.

---

**11.** *See* Note, *Private Causes of Action Under the Reporting Rules of the Consumer Product Safety Act,* 70 *Minn.L.Rev.* 954, 973–74 n. 104 (1986) (thoroughly reviewing legislative history of section 23(a) and concluding that while the shift toward broader terms might indicate an intent to expand the scope of the section 23(a) private action, "the lack of explanation accompanying the new language makes it hazardous to ascribe any particular intention to the emendations of the bill."). The Note further documents that most of the early commentators on the Act assumed that private actions were limited to

consumer product safety rules, and orders under § 15(c) and (d). *Id.* at 975 n. 106.

**12.** As the Minnesota commentator observes, the speculation problem is exacerbated because

the standard according to which a seller must report information to the Commission differs from the standard according to which the Commission may issue a § 15(c) or § 15(d) order. A seller must report all information which "reasonably supports the conclusion" that a product is hazardous, whereas the Commission cannot issue an order under § 15(c)

## VI.

We do not intend by our holding today to minimize either the important goals sought by the Act or the vital role played by the statutory reporting requirements in achieving them. Compliance by manufacturers, distributors, and retailers with section 15(b) obviously is critical to the fulfillment of the congressional purpose, to "protect the public against unreasonable risks of injuries associated with consumer products." 15 U.S.C. § 2051(b)(1) (1982). From 1978 to 1984, the overwhelming majority of the nearly 800 section 15(d) recalls, involving some 140 million potentially hazardous product units, was undertaken based upon information furnished under section 15(b). Statler, *Reporting Guidelines Under Section 15 of the Consumer Product Safety Act,* 7 *J.Prod.Liab.* 89, 92–93 (1984). The Commission's limited investigatory and enforcement resources underscore the necessity of voluntary compliance. Moreover, in a recent policy statement, the Commission documents its belief that "there is both a substantial amount of underreporting of the most serious hazards as well as undue delay in filing reports." 49 Fed.Reg. 13820, 13821 (1984). The Commission explains that "[w]hatever the reasons for not reporting, the result is that the safety of the American public can be jeopardized to the extent that large numbers of persons using or possessing the same product remain unaware of the potential risk and are unable to benefit from corrective action that would have been sought by the Commission." *Id.* at 13822.

Whether the purpose sought by the Congress, to prevent consumer product injuries, would be better achieved by arming injured consumers with the authority to enforce reporting requirements, however, is a judgment we must leave to Congress.[13] The federal courts cannot "engraft a remedy on a statute, no matter how salutory, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). We believe that neither the structure of the Act, its relationship to well-settled principles of administrative law, its legislative history, nor its practical consequences, demonstrates that Congress intended a private cause of action to arise based on an injury resulting from noncompliance with the product hazard reporting rules issued by the Commission. Therefore, the judgment of the district court is reversed and it is directed to dismiss Drake's claim against Honeywell based on violation of 16 C.F.R. Part 1115.

McMANUS, Senior District Judge, concurring in the result.

The Commission issued Part 1115 as interpretive rules and it is clear from reading Part 1115 that the rules are, in fact, interpretive. Therefore, we need not decide whether Congress gave the Commission the power to make legislative product hazard reporting rules.

---

or § 15(d) until it has determined after a formal hearing that the product "presents a substantial product hazard." *See* [the Act] § 15(c)–(d), 15 U.S.C. § 2064(c)–(d) (1982). Thus, the judge or jury would have to weigh *both* standards and consider the difference between them.
Note, *supra,* note 12 at 977 n. 114 (emphasis in original). On the other hand, when a private action is brought based upon the violation of a consumer product safety rule or Commission order, the judicial factfinder need determine only whether there was a violation which caused the plaintiff's injury. This analysis, at least as respects the causation inquiry, is akin to

that employed in cases brought under a strict liability in tort theory.

13. Congress could grant such authority if it so wished either by amending section 23(a), to extend the private right of action for violations of the statute itself, or by amending section 15(b), to grant the Commission the legislative authority to enact enforceable reporting rules. Without additional adjustment, however, the knowledge and causation elements will remain problematic. Still, Congress could well decide that the advantages of a federal forum and recovery of attorney fees outweigh these difficulties.