980 F.2d 729
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sherry DANIELS, Administratrix of the Estate of Jefferson
Daniels, and Individually, Plaintiff-Appellant,
v.
AMERICAN HONDA MOTOR COMPANY, INC., Defendant-Appellee.
 No. 91-6491.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1992.
 
 Before MERRITT, Chief Judge and RALPH B. GUY, JR. and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Sherry Daniels, appeals summary judgment for defendant, American Honda Motor Company ("Honda"), in this diversity products liability action stemming from the death of her father in an all-terrain vehicle ("ATV") accident. At issue is whether the district court erred in granting Honda's motion for summary judgment and whether the federal Consumer Products Safety Act provides a private cause of action for violations of the Act's reporting requirements. Concluding that the district court properly granted summary judgment and properly determined that the federal act does not provide a private cause of action, we affirm.
 
 I.
 
 2
 In July 1989, Jefferson Daniels was seriously injured in a one-vehicle accident while operating his 1985 Honda 250 three-wheel ATV. No one witnessed this accident. Mr. Daniels never regained consciousness from the accident, and he died in June 1991. Sherry Daniels, Mr. Daniels' daughter and the administratrix of his estate, filed suit against Honda, alleging that the ATV overturned during the course of Mr. Daniels' operation of the vehicle, thereby causing his injuries. Ms. Daniels asserts that a design defect existed in the ATV which caused it to overturn.
 
 
 3
 In her deposition, Ms. Daniels testified that she had witnessed her father operate a Honda ATV on one occasion. Based upon conversations with Harold Carter, who came upon the accident scene shortly after it occurred, Ms. Daniels determined that her father was thrown forward over the handlebars of the ATV.
 
 
 4
 However, when Harold Carter testified at his deposition, he asserted that he did not recall ever having told Ms. Daniels that her father had gone forward over the handlebars. According to Carter, Mr. Daniels was not positioned over the front of the ATV. Instead, he testified that when he arrived at the scene, Mr. Daniels' feet were on the handlebars, he was lying back across the seat, and his head was on the ground. Carter did not notice any skid marks, scrapes, or gouges on the roadway, and he was not able to state whether the ATV was completely upright.
 
 
 5
 James Stapleton, another person who witnessed the accident scene shortly after the accident occurred, testified that he found the ATV sitting upright with Mr. Daniels' feet in the handlebars and his head on the road. Stapleton saw no damage to the ATV, and he did not notice any scrapes, bruises, or other injuries on Mr. Daniels' body except for the injury to the left side of Mr. Daniels' head.
 
 
 6
 Hazel Ferrell, the mother of Mr. Daniels and the person with whom he lived at the time of his accident, testified that the ATV on which Mr. Daniels suffered his accident was not modified in any way after its purchase and required no repairs. Further, she testified that her son had never had any problems with the vehicle, despite the fact that he rode the ATV daily.
 
 
 7
 In response to Honda's summary judgment motion, plaintiff produced the affidavits of John Strauss, Mr. Daniels' treating physician, and Thomas Middlebrooks, a mechanical engineer. Both sought to testify as to the cause of Mr. Daniels' injuries. Dr. Strauss opined that Mr. Daniels died from complications resulting from head injuries he sustained in the traffic accident, and that the head injuries he sustained were consistent with "and probably resulted from the trauma to his head as sustained in said accident." (App. 224).
 
 
 8
 Mr. Middlebrooks, in his affidavit, stated that "the probable cause of the ... accident of this case in which Mr. Daniels was involved with this ATV Honda, was the design defects of the said ATV." (App. 189). Middlebrooks continued by noting that ATVs in general are inherently unstable and that the manufacturers are aware of this fact. In reaching his conclusions regarding Mr. Daniels' injuries, Middlebrooks reviewed a copy of the accident report, pictures of the ATV and accident scene that were taken by the county sheriff, and James Stapleton's deposition.
 
 
 9
 To counter the plaintiff's case, Honda presented the affidavit of Dr. Peter Fuller, a professor of anatomy at the University of Louisville School of Medicine. Dr. Fuller inspected the vehicle, reviewed Mr. Daniels' medical records, and examined the police report and photographs of the accident scene. He concluded that Mr. Daniels' injury was "not consistent with the injuries which would have been sustained in the turnover of an all-terrain vehicle on a paved road." (App. 42). Further, his inspection of the vehicle revealed "no damage to the vehicle which would be consistent with the vehicle overturning on a paved surface." (App. 42). Dr. Fuller found that had the accident occurred as alleged, Mr. Daniels' body would have suffered "road rash"; that is, "abrasions or other evidence of contact with the pavement." (App. 43). Finally, Dr. Fuller asserted that the location of Mr. Daniels' injury on the left rear portion of the head was "not consistent with an accident while using or operating an all-terrain vehicle." (App. 43).
 
 
 10
 The district court granted Honda's motion for summary judgment, while also denying Ms. Daniels' request to amend her complaint to state a cause of action for violation of the federal Consumer Products Safety Act. The court found Stapleton's testimony as to the cause of Mr. Daniels' accident to be "pure speculation," (App. 464), and found him unable to render an expert opinion concerning the cause of the accident. It then dismissed Middlebrooks' expert testimony as "conclusory" and "without factual foundation." (App. 466). Finally, the court rejected Dr. Strauss' testimony regarding causation, because it found that "Dr. Strauss [is] not ... qualified to reconstruct this accident in an effort to explain exactly how the decedent received these injuries or what caused them." (App. 465).
 
 II.
 
 11
 Summary judgment is appropriate "[w]here the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). No issue for trial exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). This court reviews a district court's grant of summary judgment de novo. Gutierrez, 826 F.2d at 1536.
 
 
 12
 Plaintiff contends that, at the very least, she has raised genuine issues of fact regarding the cause of Mr. Daniels' injuries. Specifically, she maintains that the district judge mistakenly failed to qualify Mr. Stapleton's "expert" testimony, inadequately credited Mr. Middlebrooks' and Dr. Strauss' testimony, and improperly relied upon Dr. Fuller's affidavit. We disagree.
 
 
 13
 The decision to allow a witness to testify as an expert is largely within the discretion of the trial court and will not be disturbed on appeal unless clearly erroneous or an abuse of discretion. Davis v. Combustion Eng'g, Inc., 742 F.2d 916, 919 (6th Cir.1984) (citations omitted). At issue here is whether the district judge abused his discretion in denying Stapleton the opportunity to testify as an expert.
 
 
 14
 We need not reach the question of whether Stapleton, a former Kentucky state police officer for ten years from 1957 to 1967 who had accident reconstruction experience, merited the status of an expert on the question of the cause of Mr. Daniels' injuries. An expert renders an opinion. Fed.R.Evid. 702. Stapleton did no such thing. By his own admission, he engaged in "speculation" (Stapleton deposition, app. 156) on the cause of Mr. Daniels' injuries. Simply put, Stapleton said nothing which exhibited "expertise." Rather, as the district court correctly noted, Stapleton merely testified as to what he saw--much like any other lay witness.
 
 
 15
 Thus, even if Stapleton were an expert, the district court's failure to accord him that status was harmless error. Summary judgment was still proper, because Stapleton did nothing more than speculate as to the cause of Mr. Daniels' injuries. He said nothing which would raise a genuine issue of material fact as to whether a defect in the Honda ATV was the probable cause of Mr. Daniels' injuries. Cf. Monks v. General Elec. Co., 919 F.2d 1189, 1192-93 (6th Cir.1990) (finding that expert's affidavit admissible, yet still finding that summary judgment properly granted).
 
 
 16
 Plaintiff next challenges the district court's treatment of the affidavits of Middlebrooks, Dr. Strauss, and Dr. Fuller, respectively. In short, plaintiff contends that she has raised a genuine issue of material fact as to whether the Honda ATV had a defect which was the probable cause of Mr. Daniels' injury.
 
 
 17
 To maintain a products liability action under Kentucky law, which governs this diversity action, one must provide evidence both that a defective product existed and that the product was the probable cause of plaintiff's injury. Ky.Rev.Stat.Ann. § 411.300 et seq. At most, the plaintiff created a genuine issue as to whether a defect existed by the proffering of Middlebrooks' affidavit. Middlebrooks asserted that all 1985 and 1986 Honda ATVs were defective. However, his further statement regarding causation was mere speculation. He made no study of either the ATV or Mr. Daniels' medical records. (App. 188) ("In making this affidavit, I have reviewed a copy of the accident report, pictures of the ATV and accident scene that were taken by the Pulaski County Sheriff's Office, as well as the deposition of James Stapleton, a former State Trooper who was at the accident scene and has testified as to his observation of the accident which I understand occurred on or about July 24, 1989 in Pulaski County, Kentucky.") Rather, as the district court correctly noted, Middlebrooks made a conclusory opinion regarding causation which lacked any factual foundation.
 
 
 18
 When, as here, an expert's affidavit is submitted in opposition to a motion for summary judgment, the affidavit must set forth specific facts from the record to support its conclusions. See Mitchell v. Toledo Hosp., 964 F.2d 577 (6th Cir.1992); United States v. Various Slot Mach. on Guam, 658 F.2d 697 (9th Cir.1981); Fed.R.Civ.P. 56(e). Because Middlebrooks' affidavit set forth no such facts, the district court properly granted defendant summary judgment.
 
 
 19
 Dr. Strauss' affidavit does not aid Ms. Daniels, particularly when compared with the affidavit of Honda's expert, Dr. Fuller. Dr. Strauss stated that, in his professional opinion, Mr. Daniels died from complications resulting from head injuries that he suffered in the accident, and that the head injuries he sustained are consistent with "and probably resulted from the trauma to his head as sustained in said accident." (App. 224). This testimony apparently was offered to prove causation. If that is the case, the district court correctly concluded that Dr. Strauss would not qualify as an "accident reconstruction" expert to explain exactly how Mr. Daniels received his injuries. (App. 465). But Dr. Strauss' affidavit does nothing to explain the causation issue in this matter. All parties acknowledge that Mr. Daniels died from head injuries, as Dr. Strauss testified. His testimony goes no further, because it does not begin to answer whether Mr. Daniels received his head injuries as a result of the rollover of a defective Honda ATV.
 
 
 20
 Dr. Fuller, on the other hand, examined both the ATV and the medical records and determined that Mr. Daniels' injuries were not consistent with the theory that the ATV rolled over as the result of a design defect. It is this type of fact-based testimony upon which courts properly may rely.
 
 III.
 
 21
 Plaintiff next challenges the district court's denial of her request to amend her complaint to include a cause of action for violation of the Consumer Products Safety Act reporting requirements. The court relied on the holdings of four circuits in finding that the Consumer Products Safety Act does not contemplate a private cause of action for violation of the reporting rules. See Kloepfer v. Honda Motor Co., 898 F.2d 1452 (10th Cir.1990); Benitez-Allende v. Alcan Aluminio Do Brasil, S.A., 857 F.2d 26 (1st Cir.1988), cert. denied, 489 U.S. 1018 (1989); Zepik v. Tidewater Midwest, Inc., 856 F.2d 936 (7th Cir.1988); Drake v. Honeywell, Inc., 797 F.2d 603 (8th Cir.1986).[1] We agree with the reasoning of those circuits, and join in their conclusion that the Consumer Products Safety Act does not recognize a private cause of action for violations of the Act's reporting requirements.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 This court, in an unpublished opinion, also has held that the Consumer Products Safety Act does not contemplate a private cause of action for violation of the reporting rules. See Copley v. Heil-Quaker Corp., No. 86-3360 (6th Cir. May 29, 1987) (finding the issue controlled by Drake )