**Eugene LUNDQUIST, Plaintiff,**

v.

**AMERICAN HONDA MOTOR CO., INC. and Honda Motor Co., Ltd., Defendants and Third–Party Plaintiffs,**

v.

**BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, INC., Operating Engineers Local 139 Health Benefit Fund, and Barbara F. Lundquist, Third–Party Defendants.**

**No. 86–C–264–C.**

United States District Court,
W.D. Wisconsin.

Feb. 29, 1988.

Mark A. Munger, MacDonald, Munger & Downs, Duluth, Minn., for plaintiff.

Thomas C. Ewing, Whyte & Hirschboeck, S.C., Milwaukee, Wis., for defendants and third-party plaintiffs.

## ORDER

CRABB, Chief Judge.

Defendants have filed lengthy objections to the Report and Recommendation entered herein by the United States Magistrate on January 29, 1988. I have reviewed the objections as well as the briefs and evidentiary materials filed by both parties on the motion for summary judgment. From that review I am convinced that the magistrate is correct in his recommendation that defendants' motion for summary judgment be denied with respect to Counts I and III and granted with respect to Count II.

Although I have some sympathy with defendants' frustration over plaintiff's failure to identify precisely the theory or theories for his contention that the ATV manufactured by defendants was defective, I agree with the magistrate that the defendants have not established that there is no basis on which plaintiff could prevail on his claim of negligence in the design or manufacture of the vehicle. It is not so clear as

defendants assert that plaintiff's claim is undermined by his admission that he leaned to the right in order to look backward over his shoulder.

I agree with the magistrate that the failure to warn claim is not refuted by plaintiff's statements as to how he decided to purchase the ATV or by his own understanding of the purpose and effect of a differential in machinery or vehicles in general.

Plaintiff does not object to the recommendation to dismiss Count II on the ground that a private cause of action does not lie under the Consumer Products Safety Act.

## ORDER

IT IS ORDERED that the report and recommendation of the United States Magistrate entered herein on January 29, 1988, is ADOPTED as the court's own and defendants' motion for summary judgment is DENIED with respect to Counts I and III of plaintiff's complaint and GRANTED with respect to Count II.

## REPORT AND RECOMMENDATION

JAMES GROH, United States Magistrate Judge.

Plaintiff Eugene Lundquist's Amended Complaint (Dkt. # 32) asserts a claim for damages against defendants American Honda Motor Co., Inc. and Honda Motor Co., Ltd., for injuries sustained when the all terrain vehicle he was driving went off a road. Honda manufactured and American Honda distributed the vehicle. Count I alleges that defendants are strictly liable for the defective design and manufacture of the ATV and for failure to provide clear warning and instructions as to its use. Count II alleges that defendants violated the Consumer Product Safety Act. Count III alleges that defendants failed in their duty to test and inspect the vehicle, to warn purchasers of the vehicle's hazards and that defendants mislabeled the vehicles and produced misleading advertisements of them. In their answers defendants Honda and American Honda deny the claims, assert that plaintiff fails to state a claim, and plead as an affirmative defense plaintiff's misuse of the vehicle, contributory negligence and failure to mitigate damages. (Dkt. ## 34 and 37) Defendants have joined three other parties in a Third–Party Complaint. Those parties are not parties to the current motion. Defendants have now moved for summary judgment against plaintiff on all counts pursuant to Fed. R.Civ.P. 56 (Dkt. # 81).

## FACTS [1]

For purpose of this motion only, there is no genuine issue of material fact with respect to the following:

1. Plaintiff Eugene Lundquist is a citizen of the State of Wisconsin, residing in Foxboro, Wisconsin (Removal Petition

---

1. Plaintiff has failed to comply with this Court's Procedure to be Followed on Motions for Summary Judgment, §§ III(B) and (C). That procedure requires the opposing party to directly respond to each paragraph of the moving party's proposed findings of fact and conclusions of law. For the proposed findings of fact, the opposing party must identify the part of the paragraph that the party contends contains a genuine issue of material fact and identify the evidence establishing such issue. The opposing party may also put forward material facts not stated by the movant. The opposing party must also respond to each of the moving party's conclusions of law and identify the parts which are disputed. The opposing party may put forward conclusions not suggested by the moving party. In this case, plaintiff was totally non-responsive to defendants' proposed findings and conclusions, and submitted his own, sketchy findings and conclusions. (Dkt. # 90)

The inadequacy of many of defendants' proposed findings must be noted. Many of defendants' "findings" are not facts at all but simply declarations of the content of testimony in depositions. (e.g., Findings of Fact ## 34, 35, 39, 41, 43, 44, 46, 47 and 48, Dkt. # 83) Others are merely arguments. (e.g., Findings of Fact ## 53, 54 & 55)

In short, neither party has observed the basic requirements on summary judgment. (See generally, *Friedel v. City of Madison,* 832 F.2d 965 (7th Cir.1987)). As a result, an independent search of the record has been necessary. This too has been frustrated to some extent by the absence of a complete record, as defendants filed only the individual pages of deposition transcripts they are relying upon. (See Dkt. # 84) Plaintiff responded by filing the full text of some, but not all, of the depositions. (See Fed. R.Civ.P. 30(f))

¶ 4(a), Dkt. # 3; Lundquist Dep. p. 3, Dkt. # 91).[2]

2. Defendant American Honda Motor Co., Inc. (American Honda) is, and was at the time of this action, a California corporation, having its principal office and place of business at 100 West Alondra Boulevard, Gardena, California (Removal Petition, ¶ 4(b), Dkt. # 3).

3. Defendant American Honda has named as its authorized agent in the State of Wisconsin, the C.T. Corporation Systems, Inc., and in fact, is doing business in the State of Wisconsin. (Amended Compl. ¶ 1, Answers ¶ 1, Dkt. ## 34 & 37).[3]

4. Defendant Honda Motor Co., Ltd. (Honda) is a Japanese corporation with its principal place of business located at No. 1–1, 2–chome, Minami–Aoyamaminato–KU, Tokyo 107, Japan. (Ex. G, p. 5, Dkt. # 84)

5. Defendant Honda has no authorized agent in the State of Wisconsin but products manufactured, designed and processed by defendant Honda are used and consumed within Wisconsin pursuant to Wis. Stat. 801.05(4). (Amended Compl. ¶ 1, Answers ¶ 1)

6. Plaintiff Lundquist was born on December 28, 1929. (Lundquist Dep. p. 3) He is a heavy equipment operator by trade, with experience operating tractors, trucks, cranes, bulldozers, backhoes and semi-trucks dating back to the 1940's and continuously from 1977 until his injury. (Lundquist Dep. pp. 3–5, 18–19)

7. Lundquist and his wife own and live on a 349 acre farm. They own and operate six tractors on their farm. (Lundquist Dep. pp. 7, 47)

8. In January of 1984, Lundquist purchased a 1984 Honda ATC 200 ES (ATC), planning to use the vehicle on his farm and for hunting. (Lundquist Dep. pp. 42–43; Defendants' Answers to Plaintiff's First Set of Interrogatories, p. 5, Ex. G, Dkt.

# 84); August 28, 1987, Letter from Defendants' Attorney to Plaintiff's Attorney, Ex. J, Dkt. # 92; September 23, 1987, Letter from Plaintiff's Attorney to Defendants' Attorney, Ex. I, Dkt. # 84).

9. After purchasing the ATC, Lundquist operated it on his farm, as well as through the woods and fields surrounding his farm. (Lundquist Dep. pp. 83–84, 122)

10. In addition, Lundquist used the ATC to go hunting, to visit his friends and neighbors and to do chores on his farm. (Lundquist Dep. pp. 101–102, 122)

11. Lundquist occasionally rode the ATC recreationally along a four-mile route in the area of his home, which included several gravel roads, as well as a blacktop-covered section of County Highway B near Foxboro. (Lundquist Dep. pp. 111–114)

12. Lundquist made at least four to six trips along that four-mile route prior to the accident that is the subject of this litigation. (Lundquist Dep. p. 114), including up to two trips after dark. (Lundquist Dep. p. 118)

13. In total, Lundquist rode the ATC at least 100 miles before the accident. (Lundquist Dep. p. 122)

14. The accident at issue in this case occurred on the night of August 15, 1984, not earlier than 10:15 p.m. and not later than approximately 11:00 p.m. (Lundquist Dep. pp. 130, 135)

15. On that day, Lundquist arose at approximately 6:00–6:30 a.m., and worked from 7:30 a.m. until 4:30 p.m., operating a backhoe. (Lundquist Dep. p. 131)

16. On arriving home from work, about 5:00–5:30 p.m., Lundquist had one beer and then did repair work on his truck before going to his daughter's home for dinner at about 6:00–7:00 p.m. (Lundquist Dep. pp. 122, 133)

---

**2.** Defendant submits excerpts from the depositions of Lundquist and two of Lundquist's expert witnesses, Donald Anderson and Dr. Bobbie Richardson. (Dkt. # 84) Plaintiff presents the full depositions of Lundquist and Richardson and excerpts from several other depositions.

(Dkt. 92) Further references will be made only to the particular deposition.

**3.** The answers of defendants Honda (Dkt. # 37) and American Honda (Dkt. # 34) are identical except for the names of the respective parties. Further references will be only to "Answers."

17. While at his daughter's home Lundquist had one beer and also an unspecified amount of brandy. Lundquist did not have any other alcoholic beverage after approximately 6:30 p.m. (Lundquist Dep. pp. 133–135)

18. After dinner Lundquist returned home and completed his work on his truck, took it out for a half-mile test drive, returned, cleaned up and watched television. (Lundquist Dep. pp. 133–135)

19. Because it was very hot that evening, Lundquist left his house at about 10:15–10:30 p.m. on his ATC to go for a ride to cool off. (Lundquist Dep. p. 135)

20. It was dark outside and Lundquist had his headlight turned on. (Lundquist Dep. pp. 138–139)

21. Lundquist's route that evening included the same portion of Highway B that he had previously traveled as part of the four-mile route described in Finding 11, above. (Lundquist Dep. pp. 112–114, 139)

22. Lundquist traveled along Highway B, in the right-hand lane, at a speed of not less than 10 nor more than 15 miles per hour. (Lundquist Dep. pp. 137–138, 145, 181)

23. As Lundquist was traveling west along Highway B, he approached a point at which the road curved to the left (southwest). (Lundquist Dep. pp. 113, 144)

24. Lundquist saw the reflection of a light pass across his windshield, and he turned and looked ·ver his left shoulder in an attempt to identify the source of light. (Lundquist Dep. pp. 144–145)

25. Lundquist did not see anything when he looked over his shoulder. (Lundquist Dep. p. 146)

26. Lundquist's ATC went off the road. (Lundquist Dep. p. 146)

### DISPUTED FACTS

1. Whether plaintiff relied on any negligent misrepresentations of fact by Honda and American Honda in purchasing the ATC. (Lundquist Dep., pp. 44–46, 67, 206)

2. Whether plaintiff's body motions in turning to look over his shoulder to observe an approaching vehicle, combined with the effects of the lack of a differential gear in the ATC, caused plaintiff's vehicle to straighten out of its turn and go off the road at a curve. (Lundquist Dep. pp. 146, 172–175, Richardson Dep. pp. 126–127)

3. Whether plaintiff reasonably anticipated and fully appreciated the hazards concerning the operation of the ATC. (Lundquist Dep. pp. 87–88, 128–129)

4. Whether defendants supplied adequate warnings of the hazards of the lack of a differential in the operation of the ATC. (Issue identified but only argued to the extent of disputed fact n. 3 above.)

5. Whether defendants knowingly failed to comply with the hazard reporting requirements of the Consumer Products Safety Commission.

### CONCLUSIONS OF LAW

Defendants American Honda and Honda move for dismissal of plaintiff's Count II, Consumer Products Safety Act claim under Fed.R.Civ.P. 12(b)(6). Defendants contend that plaintiff has no private cause of action under the Consumer Product Safety Act (CPSA) because such a cause of action cannot arise from defendant's failure, if any, to comply with the Consumer Product Safety Commission's (CPSC's) product hazard reporting rules. Defendants move, in the alternative, for summary judgment on Count II under Fed.R.Civ.P. 56. Defendants also move for summary judgment on plaintiff's other claims. They contend that plaintiff fails to present any evidence that plaintiff's injury was caused by any of their acts and omissions. They assert that the accident occurred due to plaintiff's failure to watch where he was going rather than defendant's failure to provide their vehicle with a rear wheel differential. They also urge that any need for a duty to warn plaintiff about the lack of a differential was eliminated by plaintiff's knowledge that the vehicle had no differential.[4]

---

**4.** Defendants present an unjustifiably narrow view of the issues in this case, as indicated in their proposed finding of fact # 49. (Dkt. # 83) The defendants submit that:

### Dismissal of Consumer Products Safety Act Claim

Honda and American Honda request dismissal of plaintiff's CPSA claim as part of their summary judgment motion. They request the court to adopt the holding of *Drake v. Honeywell, Inc.*, 797 F.2d 603 (8th Cir.1986), that a private right of action does not arise under 15 U.S.C. § 2072(a) for an injury resulting from a failure to report a product hazard in accordance with rules issued by the CPSC under 15 U.S.C. § 2064(b).[5]

The reporting rules on which plaintiff relies in stating its CPSA claim were promulgated in interpretation of 15 U.S.C. § 2064(b) which requires manufacturers, distributors or retailers, who obtain information reasonably supporting the conclusion that their product fails to comply with a CPSC safety rule or contains a defect which would create a substantial product hazard, to inform the CPSC of the non-compliance or hazard. CPSC set forth the details of the reporting process in the rules which are the subject of this motion.[6]

The Consumer Product Safety Act grants a private right of action for damages to:

[a]ny person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or *any other rule* or order issued by the Commission.... [emphasis added]

15 U.S.C. § 2072(a). The term "consumer product safety rule" is defined in 15 U.S.C. § 2052(a)(2) but the term "any other rule" is not defined by the CPSA. The issue on this motion is whether 16 CFR § 1115 *et seq.* falls within the term "any other rule."

The United States Court of Appeals for the Eighth Circuit is the only Court of Appeals to have considered this question. In *Drake v. Honeywell, Inc.*, 797 F.2d 603 (8th Cir.1986), the court, in a carefully reasoned opinion, unequivocally and unambig-

---

[t]he plaintiff subsequently stipulated that the plaintiff's "claim is limited to the defects testified to by Dr. Richardson, those being related to the lack of a differential and a failure to warn" of the lack of a differential. (Ewing Affidavit, Exhibit I)

The evidence referred to is a letter by plaintiff's attorney to defendants' attorney dated September 23, 1987. (Ex. I, Dkt. #84) In the letter, plaintiff's attorney states:

Similarly, with respect to clause 4, our claim is not simply one relating to the lack of a differential; it also involves failure to warn. Therefore, I would agree to a stipulation and protective order in this regard provided Honda R and D provides the documents relative to prior models which cover the differential design and labeling, instruction, manual issue as discussed by Dr. Richardson in his deposition. I am assuming that by the tone of the second paragraph of your letter (at page 3 under clause 4) you will permit inspection of the 24,000 pages of CPSC material held by American Honda and/or Honda in Los Angeles. This obviously is not a stipulation, but an offer to stipulate that was never concluded. It is equally clear that the "stipulation" does not limit the failure-to-warn issue to the lack of a differential.

5. Plaintiff's complaint alleges only that defendant violated an unspecified section of the CPSA. However, both parties present the issue as being whether plaintiff can maintain a private right of action for defendants' failure to comply with the product hazard reporting requirements set forth by the CPSC in 16 CFR § 1115 *et. seq.* (hereinafter referred to as "the reporting rules"). (Def.Br. p. 29, Dkt. #91; Pl. Br. p. 21, Dkt. #93)

6. The rules have been summarized in 16 CFR § 1115.12(a) which states:

Subject firms should not delay reporting in order to determine to a certainty the existence of a noncompliance or a defect and the substantiality of a possible hazard. The obligation to report arises upon receipt of information from which one could reasonably conclude the existence of a noncompliance or of a defect which could create a substantial product hazard. Thus an obligation to report may arise when a subject firm receives the first information regarding a potential hazard or noncompliance. (See § 1115.14(c).) A subject firm in its report to the Commission need not admit or may specifically deny that the information it submits reasonably supports the conclusion that its consumer product is noncomplying or contains a defect which could create a substantial product hazard within the meaning of section 15(b) of the CPSA. After receiving the report, the staff will preliminarily determine whether the noncompliance or defect presents a substantial product hazard. This determination can be based on information supplied by a subject firm or from any other source. If the matter is adjudicated; the Commission will ultimately make the decision as to substantial product hazard or will seek to have a court make the decision as to imminent product hazard.

uously held that no cause of action arose from a violation of 16 CFR 1115 *et seq.* The court's analysis began with the acknowledgement that the plain meaning of the statutory language of 15 U.S.C. § 2072(a) ("any other rule") would give rise to a private right of action for violation of the reporting rules and noted that other courts have so held. *Drake,* 797 F.2d at 605–606 and n. 3.[7]

The court in *Drake* expressed, in detail, its reasons for rejecting the plain meaning canon. It noted first that ordinarily Congress creates a private right of action for violation of the statute itself. The Consumer Credit Protection Act, 15 U.S.C. § 1640(a), is cited as an example. *Drake,* 797 F.2d at 606. However, 15 U.S.C. § 2072(a) establishes a private right of action not for violation of the statute itself, but for violation of the CPSC's rules. The court concluded from this that Congress intentionally withheld the right to seek damages for injury resulting from a violation of the statute. To allow a recovery for violation of the reporting rules would frustrate this intent, the court reasoned, because those rules are merely interpretive of the statute; thus the assertion of a right of action for violation of the reporting rules would be the equivalent of a cause of action for a violation of the statute itself. *Drake,* 797 F.2d at 606–609.

The court in *Drake* noted that the nature of 16 CFR § 1115 *et. seq.,* when viewed in conjunction with established principles of administrative law regarding interpretive rules, reinforced this conclusion. Administrative rules are enforceable as law only if adopted pursuant to authority delegated to the agency by Congress by statute.[8] Interpretive rules, by contrast, are not enacted pursuant to any explicit statutory delegation of law-making power, but are merely guidelines.[9] Such rules, the court explained, carry no weight on judicial review beyond their inherent persuasiveness and cannot be independently enforced as law.

> [A] claim of conduct inconsistent with an interpretive rule is advanced only to show that the statute itself has been violated. An action based on a violation of an interpretive rule does not state a legal claim. Being in nature hortatory, rather than mandatory, interpretive rules never can be violated. *See generally* 2 K. Davis, *Administrative Law Treatise,* §§ 7.8–.11 (2d ed. 1979); B. Schwartz, *Administrative Law, §§ 4.6–.7 (2d ed. 1982).*

*Drake,* 797 F.2d at 607.[10]

As noted, the court held that the report-

---

**7.** *Drake,* 797 F.2d at 606 n. 3 states:

> The "plain meaning" construction has been used by several district courts to support a private cause of action. *See, e.g., Wilson v. Robertshaw Controls Co.,* 600 F.Supp. 671, 675 (N.D.Ind.1985); *Payne v. A.O. Smith Corp.,* 578 F.Supp. 733, 738 (S.D.Ohio 1983); *Young v. Robertshaw Controls Co.,* 560 F.Supp. 288, 292–93 (N.D.N.Y.1983); *Butcher v. Robertshaw Controls Co.,* 550 F.Supp. 692, 698–99 (D.Md.1981). It also was relied upon by the Minnesota Supreme Court in *Swenson v. Emerson Electric Co.,* 374 N.W.2d 690 (Minn. 1985), *cert. denied,* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986), to reach the identical conclusion.

Plaintiff relies on several of the above-cited cases and notes the two Northern District of Indiana cases in suggesting that this court should not create a conflict among district courts within the Seventh Circuit. However, the Northern District of Indiana recently overruled itself and explicitly adopted the holding of *Drake* in an opinion yet to be published. *Zepik v. Pleasure Industries,* 118 F.R.D. 455, 458 (N.D.Ind.1987).

**8.** Congress did not specifically delegate legislative rule-making authority to the CPSC under 15 U.S.C. § 2064(b). *Drake,* 797 F.2d at 607–608.

**9.** The Administrative Procedure Act (APA) specifically includes interpretations in its definition of "rule." 5 U.S.C. § 551(4). However, interpretive rules are specifically excluded from APA's promulgation requirements. 5 U.S.C. § 553(b)(A) In putting forward 16 CFR § 1115 *et seq.* the CPSC followed the APA's notice and comment promulgation requirements (*Swenson,* 374 N.W.2d at 698) but that cannot affect the character of the rule. *Drake* at 608, n. 7.

**10.** As the court noted, an interpretative rule is not even enforceable by the agency which adopts it. *Drake,* 797 F.2d at 607. A construction which would permit enforcement of such a rule in private damage litigation would have the extraordinary consequence of granting to the random litigant a power which is denied the rule-making body itself.

ing rules were interpretive only.[11] Because a private right of action could not arise directly from a violation of the act, and because the reporting rules were merely interpretive, the court concluded that no private right of action could arise from a violation of the reporting rules. *Drake*, 797 F.2d at 609.[12]

■ I am persuaded by the reasoning of the *Drake* decision and will recommend that the district court follow the holding and deny a cause of action based on a violation of 16 CFR § 1115 *et seq.* Beyond the merit of the decision, the Seventh Circuit has also instructed that:

[a]lthough decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight. This is especially true when they specifically reject decisions from other district courts that the district court seeks to rely on.... In short, we simply ask the district courts to show appropriate deference before rejecting the direct authority of a sister circuit.

*Richards v. Local 134, Intern. Broth. of Elec. Wkrs.*, 790 F.2d 633, 636 (7th Cir. 1986). As noted above, the Northern District of Indiana has already followed this admonition and overruled its prior decisions in favor of the *Drake* analysis. *Zepik v.*

*Pleasure Industries,* 118 F.R.D. 455, 458 (N.D.Ind.1987).[13]

As plaintiff's CPSA claim (Count II) has no other basis in law, it will be recommended that plaintiff's Count II be dismissed for failure to state a claim for which relief can be granted.

Under Fed.R.Civ.P. 56(c) summary judgment shall be rendered:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted....

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such, that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

**11.** The CPSC explictly promulgated the rules as interpretive.

The purpose of this Part 1115 is to set forth the Consumer Product Safety Commission's (Commission's) *interpretation* of the reporting requirements imposed on manufacturers (including importers), distributors, and retailers by section 15(b) of the Consumer Product Safety Act, as amended (CPSA) (15 U.S.C. 2064(b)) and to indicate the actions and sanctions which the Commission may require or impose to protect the public from substantial product hazards, as that term is defined in section 15(a) of the CPSA. [emphasis added]

16 CFR 1115.1. *Drake,* 797 F.2d at 608, n. 7.

**12.** That the reporting rules are interpretive rules has not been a major consideration in the other decisions on this issue. Several of the courts which found a private right of action also acknowledged that the rules were interpretive. *Drake,* 797 F.2d at 607, n. 5.; Cf. *Payne v. A.O. Smith Corp.,* 578 F.Supp. 733, 738 (S.D.Ohio 1983).

**13.** This is not to suggest that the cases rejected in *Drake* do not have a plausible basis for their position. The statute creating a private right of action does allow such right for the violation of "any other rule." 15 U.S.C. § 2072(a) Thus, a literal reading of the statute would create a private right of action for a violation of the reporting rules. The literal reading of the statute was followed by the Supreme Court in interpreting another section of the CPSA in *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Allowing a private right of action is also consistent with a stated purpose of the CPSA to protect the public from unreasonable risks of injury. 15 U.S.C. § 2051(b)(1). Additionally, as the court itself noted in *Drake,* the legislative history of the private right of action is inconclusive as to Congress' intent regarding the scope of 15 U.S.C. § 2072(a). *Drake,* 797 F.2d at 609–610.

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the pleadings and evidence which the party believes to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–3, 91 L.Ed.2d 265 (1986). All reasonable inferences must be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), *Friedel v. City of Madison,* 832 F.2d 965, 972 (7th Cir.1987). The nonmoving party may withstand the motion merely by producing circumstantial evidence which would reasonably allow a trier of fact on inference to resolve the issue of material fact in that party's favor. *Parker v. FNMA,* 741 F.2d 975, 980 (7th Cir.1984).

### A. *Plaintiff's Movements and ATC's Lack of a Differential*

Each of plaintiff's causes of action require proof that defendant's acts or omissions caused plaintiff's injury. Defendant's motion for summary judgment rests primarily on its assertion that the facts establish that defendant did not cause plaintiff's injury. Count I of the complaint is based on a theory of strict liability under Wisconsin law. To recover under a strict liability theory plaintiff must prove:

(1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

*Dippel v. Sciano,* 37 Wis.2d 443, 460, 155 N.W.2d 55, 63 (1967).

Plaintiff's Count III is based on the allegation that defendants negligently failed to comply with their duty to warn plaintiff about the "hazardous propensity" in the use of the ATC, that defendants failed to properly test and inspect the product, and that defendants' labeling and advertising misrepresented the product and its characteristics. The test of negligence is whether conduct foreseeably creates an unreasonable risk to others. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis.2d 723, 732, 275 N.W.2d 660, 664–665 (1979). To be entitled to recovery under a negligence theory a plaintiff must prove that defendants' negligence was a cause of the injuries. Cause is established by showing that the negligence was a substantial factor in producing the injury. *Clark v. Leisure Vehicles, Inc.,* 96 Wis.2d 607, 617, 292 N.W.2d 630, 635 (1980).

Honda and American Honda contend that the accident and plaintiff's injury could not have been caused by any of their acts or omissions. Plaintiff's ATC ran off the road when he looked over his shoulder to check for approaching vehicles. Movants' contention rests on the assertion that plaintiff testified that he leaned and shifted his weight to the right when looking over his left shoulder while the theory which plaintiff's expert, Richardson, puts forward is based on the assumption that plaintiff leaned to the left.

An analysis of the evidence shows that defendants overstate their case. Lundquist did in fact testify at his deposition that he leaned to his right when looking over his left shoulder. (Lundquist Dep. p. 146) and that his weight shifted to the right and he placed pressure on the vehicle's right foot peg. (Lundquist Dep. pp. 172–173) He had not yet started to turn around forward when he felt himself losing control. (Lundquist Dep. p. 175) However, Lundquist also testified that he leaned "a little bit back" as well. (Lundquist Dep. p. 146) Plaintiff's expert, Bobbie L. Richardson, is a Professor of Mechanical and Electrical Engineering at Marquette University. (Richardson Dep. p. 3) Richardson's theory is that plaintiff's body shifts increased the load on the left rear wheel and decreased

the load on the front wheel of the three-wheel vehicle. Because the vehicle did not have a differential[14] (causing it to tend to run in a straight line), the weight shift to the left rear wheel overrode any action to steer the vehicle to negotiate the left turn, thus causing it to head straight and off the road. (Richardson Dep. p. 116) Plaintiff did tell Richardson that he (plaintiff) leaned left when turning the vehicle. (Richardson Dep. p. 71) Richardson admitted that he did not know plaintiff's exact body movements. (Richardson Dep. p. 125) When asked whether the left rear wheel would have been loaded by a shift to the right, Richardson answered:

A. If he had shifted his body to the right, it would have not had the same effect in loading the left rear wheel; but in terms of shifting his body if in addition to shifting to the right he shifted it to the rear, he straightened up somewhat, that combination may have the effect of loading the left rear wheel sufficient to overcome the front wheel.

Q. And on what do you base that opinion?

A. Mechanics. That if you move the center of gravity rearward by straightening up, you take the load off the front and put it on the back and now that load is going to be distributed between the two rear wheels and there may be a sufficient relative increase on the left rear wheel compared to the decrease on the front to overcome the steering inputs from the front.

Q. If he, however, in adjusting himself moved to the right and not rearward, would that have the same effect of loading the left rear wheel?

A. If in moving to the right he increased the foot load pegging on the left, it may have.

(Richardson Dep. p. 127) Richardson could not quantify the weight shifts needed to overload the left rear wheel nor could he testify as to the weight shifts plaintiff actually made. (Richardson Dep. p. 126)

Clearly, the issue of the relationship between plaintiff's body shifts and the ATC's defects is within the province of the jury. Even if plaintiff told Richardson that he had shifted left when he actually shifted right, Richardson states that a rightward shift combined with a rearward shift may cause a left wheel overload, and plaintiff testified that his shift had a rearward element. But aside from the uncertainty of the proof on this critical question, it is plain that a court could not grant summary judgment on the skeletal findings defendants have proposed. The court is asked to conclude, as a matter of law, that plaintiff's injuries were not caused by the failure to equip the vehicle with a differential. The court is invited to make this decision in a factual vacuum without the benefit, *inter alia*, (1) of any description of the vehicle; (2) of any facts as to its operation; (3) of a definition of a differential or the facts pertaining to the consequences and effects of having or not having one; or (4) of facts pertaining to the physical characteristics of the highway at the accident scene.

Defendants err in their assertion that plaintiff has failed to meet his burden under *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As previously noted, the moving party on summary judgment has the initial burden of informing the court of the basis for its motion and identifying the evidence which establishes the party's entitlement to judgment as a matter of law. *Celotex,* 106 S.Ct. at 2553. Defendants have failed to meet that burden. It will therefore be recommended that defendants' motion for summary judgment be denied in this regard.

### B. *Plaintiff's Knowledge and Defendants' Duty to Warn*

Honda and American Honda next urge that no genuine issue of material facts exists to support a conclusion that plaintiff's injuries were caused by defendants'

---

**14.** A differential is a gear which adjusts the speed of parallel driving wheels in turning vehicles in order to compensate for the different are radii created when the vehicle turns. See *e.g., The Random House Dictionary of the English Language* (1981) at 402; *Webster's New International Dictionary (2d ed. 1958) at 727.*

failure to warn plaintiff about the lack of a differential.[15] Plaintiff has raised the duty to warn under both the negligence and the strict liability claims. As Judge Posner observed, in practice the strict liability duty to warn is hard to distinguish from duty to warn imposed under negligence theories. *Flaminio v. Honda Motor Co., Ltd.,* 733 F.2d 463, 466 (7th Cir.1984).

> "[T]he duty to warn [in a strict liability case] arises if the seller has, or should have, knowledge of a dangerous use." *Krueger v. Tappan Co.,* 104 Wis.2d 199, 206–07, 311 N.W.2d 219, 223 (Wis.App. 1981).

*Flaminio,* 733 F.2d at 466.

■ Defendants rely on Eighth and Ninth Circuit cases which hold that:

> If, despite deficient warnings by the manufacturer, a user is fully aware of the danger which a warning would alert him or her of, then the warning is not a proximate cause of the injury.

*Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 688 (8th Cir.1981) citing *Nelson v. Brunswick Corp.,* 503 F.2d 376, 379 (9th Cir.1974). However, in Wisconsin, knowledge of a danger is an issue of contributory negligence. *Netzel v. State Sand & Gravel Co.,* 51 Wis.2d 1, 13, 186 N.W.2d 258, 265 (1971). Defendants have alleged contributory negligence as an affirmative defense. (Answer, Affirmative Defense ¶ 3)

Plaintiff's brief in opposition does not address the issue of plaintiff's knowledge, but rather the factual issue of the adequacy of the manufacturer's warnings. (Dkt. # 91, pp. 18–20) Defendants do not address the adequacy of the warnings, merely plaintiff's knowledge of the lack of differential without regard to whether the warnings were adequate.[16]

The rule in Wisconsin is that in any case where the average consumer might not reasonably anticipate and fully appreciate the dangerous condition of a product or the attendant risk of injury, the manufacturer has a duty to warn. *Vincer v. Esther Williams All–Aluminum Swimming Pool Co.,* 69 Wis.2d 326, 230 N.W.2d 794 (1975).

*DeSantis v. Parker Feeders Inc.,* 547 F.2d 357, 363–4 (7th Cir.1976). Thus, the issue is whether plaintiff's knowledge enabled him to reasonably anticipate and fully appreciate the dangerous condition caused by the lack of a differential in this vehicle.

Plaintiff has admitted that he knew the vehicle had no differential. He testified at his deposition that he recognized that the vehicle had "a posit rear end." (Lundquist Dep. p. 87) The deposition continued:

Q. What do you mean by a posit rear end?

A. Both wheels pull at the time.

Q. What significance was that to you?

A. When you make a corner, when you make a corner one wheel's got to slip or spin to keep up with the other wheel.

Q. How do you know that?

A. Well, just the way it acts. If you hit a, when you're out in the field and you hit a chuck hole in the field, now I'm not talking right around the barn, but in the field, you hit a chuck hole and you curve, she wants to straighten the machine out because both wheels want to push directly straight ahead all the time.

(Lundquist Dep. p. 87–8) He further stated that he discovered the "posit traction" on his own. (Lundquist Dep. pp. 128–9)

■ From this testimony defendants conclude that the lack of a warning could not have caused plaintiff's injuries because no warning was necessary. This reasoning is flawed. Plaintiff's knowledge as

---

**15.** As noted in footnote 4, *supra* pages 1199–1200, this motion is predicated on the incorrect premise that the scope of the duty to warn issue is limited to warnings about the lack of a differential. I will therefore consider this aspect of defendants' motion as one for partial summary judgment.

**16.** This aspect of defendants' motion suffers from the same poverty of factual development noted *supra,* p. 1204. The proposed findings contained neither warnings nor a statement that there were none. Nor are there proposed findings with regard to having or not having a differential and the resultant need or absence of need for warnings.

presented by the evidence cannot necessarily be said to have enabled him to grasp the full dimensions of the vehicle's potentially dangerous condition. There is no showing that plaintiff brings any technical expertise to that subject, and no findings have been offered regarding the range of risks that may be associated with the lack of a differential in a vehicle of this type. Lundquist's statement that he knew the vehicle lacked a differential, combined with his minimal description of what that meant to him, falls far short of establishing as a matter of law his full awareness and appreciation of the potentially hazardous nature of the vehicle in general and of the vehicle's lack of a differential in particular.

 As previously noted, defendants have proposed no findings that they provided plaintiff with any warnings or to identify or negate the existence of conditions requiring a warning. Defendants having failed to meet their burden, plaintiff was under no burden to come forward with evidence on these issues. *Celotex Corp. v. Catrett*, 106 S.Ct. at 2553. Because neither the satisfaction of the duty to warn, if any, nor plaintiff's knowledge of the potential dangers to which a warning would alert him, has been established, a genuine issue of material fact exists as to whether defendants' failure to warn with regard to the absence of a differential was a cause of plaintiff's injury.

## C. *Reliance on Negligently Misrepresentative Advertising*

 Although defendants only raise it in passing in their brief, I will also address the issue of whether plaintiff relied on defendant's negligently-made representations. Defendants assert that plaintiff's decision to purchase the ATC was not influenced by any negligently-made representations by defendants in their advertising of the vehicle.

In Wisconsin:

The elements of negligent misrepresentation are (1) that the defendant made the alleged representation of fact, (2) that such representation was untrue, (3) that the defendant was negligent in making the representation, and (4) that the plaintiff believed the representation to be true and relied thereon to his or her damage.

*Costa v. Neimon*, 123 Wis.2d 410, 415, 366 N.W.2d 896, 899–900 (Ct.App.1985). Defendants rely on plaintiff's statement that it would be fair to say that his decision to purchase the vehicle was not based in any way on any advertising. (Lundquist Dep. pp. 67 & 207) However, earlier in the deposition the following interchange occurred in context of plaintiff's early comparative shopping activities:

Q. So then how did you go about deciding which one (all terrain vehicle) you wanted?

A. [By plaintiff]: Well, I seen on TV they had this Big Red [a 1984 Honda ATC 200ES], with a shaft drive. It had the high, low range with reverse and I liked that. And I liked the shaft drive. I don't like the chain drive, too much trouble. They were pretty, they were nice.

(Lundquist Dep. pp. 44–5)

Plaintiff's statements are not necessarily contradictory. A reasonable jury could draw an inference that although plaintiff's final decision to buy defendants' vehicle may not have been consciously based on advertising, plaintiff did rely on the advertising to create his first impression of the vehicle and consider it as a purchase option. As with the other aspects of their motions, defendants again offer no finding that their advertising did not misrepresent the vehicle. Indeed, no evidence of the advertisements has been presented, let alone a factual basis for concluding they are free of potential for misrepresentation. This issue, it seems, cannot readily be isolated from the earlier questions of whether the vehicle was dangerous and whether adequate warnings of the hazard(s) were given.

For these reasons, I conclude that genuine issues of material fact are presented with respect to the issue of whether plaintiff relied to his damage on negligent advertising misrepresentations by defendants.

## RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendants' Motion to Dismiss Count II of plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) be GRANTED, and that defendants' Motion for Summary Judgment as to Counts I and III be DENIED.

ENTERED this 29 day of January, 1988.