Bruce KEHR on behalf of Charles KEHR, a minor, and Grover and Shirley Taber, Plaintiffs,

v.

YAMAHA MOTOR CORPORATION, U.S.A., Yamaha Motor Manufacturing Corporation of America, Yamaha Motor Co., Ltd., Defendants.

No. 08 cv 7379 (CM).

United States District Court, S.D. New York.

Dec. 5, 2008.

Paulina Do Amaral, Lieff Cabraser Heimann & Bernstein LLP, New York, NY, for Plaintiffs.

James Patrick Donovan, Wilson Elser, Moskowitz Edelman & Dicker LLP, White Plains, NY, for Defendants.

MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS, TRANSFER OR SEVER THE CLAIMS OF PLAINTIFFS GROVER AND SHIRLEY TABER; DENYING DEFENDANTS' MOTION TO DISMISS OR STRIKE CERTAIN PORTIONS OF PLAINTIFFS' COMPLAINT; AND GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SIXTH CAUSE OF ACTION FOR VIOLATION OF THE CONSUMER PRODUCT SAFETY ACT.

McMAHON, District Judge.

Bruce Kehr, on behalf of his son Charles Kehr, a minor, and husband and wife, Grover and Shirley Taber ("Plaintiffs") filed this lawsuit on August 20, 2008 against Yamaha Motor Corporation, U.S.A., Yamaha Motor Manufacturing Corporation of America, Yamaha Motor Co., LTD. ("Yamaha") seeking damages for strict product liability, negligence, breach of implied warranty, fraudulent concealment, violation of the Consumer Product Safety Act, violation of N.Y. Gen. Bus. L. § 349, and loss of consortium. Plaintiffs also make a claim for punitive damages.

Before this Court is Yamaha's motion to dismiss, transfer, or sever the claims of the Taber plaintiffs; Yamaha's motion to dismiss or strike portions of the complaint; and Yamaha's motion to dismiss plaintiffs' Sixth Cause of Action.

Plaintiffs' have made a Joint Motion for Transfer and Coordination under 28 U.S.C. § 1407 with plaintiffs in other actions to the Judicial Panel on Multidistrict Litigation on November 11, 2008.

Yamaha's motion to dismiss, transfer or sever the claims of the Taber plaintiffs is denied.

Yamaha's motion to dismiss or strike certain portions of the complaint is denied.

Yamaha's motion to dismiss plaintiffs' Sixth Cause of Action is granted.

## I. Background

This case involves the Yamaha Rhino, a side-by-side, all terrain utility vehicle (the "Rhino"). In two separate incidents, plaintiffs allege that design defects in the Rhino caused it to tip over while being operated, injuring plaintiffs.

On June 21, 2007, 16 year-old Charles Kehr was riding in the passenger seat of a 2007 Rhino in Dutchess County, New York. (Compl. ¶ 14.) The vehicle rolled over while making a turn, causing the Rhino's rollbar to crush and sever Charles Kehr's right fingers. Charles Kehr's leg was also injured in the accident. Since the accident, Charles Kehr has undergone five surgeries to repair and reattach his fingers. (Id.) At all times referenced herein, Charles Kehr, and his father and legal guardian, Bruce Kehr, were residents of the State of New York and the County of Dutchess. (Id. ¶ 13.)

On August 20, 2005, 59 year-old Grover Taber was driving a 2005 Rhino in Oswego County, New York, when the vehicle tipped over, and caused injuries to Grover Taber's left foot, leg and shoulder. (Compl. ¶ 16.) Since the accident Grover Taber has undergone several surgeries and other medical treatment for these injuries. (Id.) Shirley Taber, Grover Taber's wife, also alleges that her husband's injuries have had a serious and detrimental impact on their relationship. At all times referenced herein, Grover and Shirley Taber were residents of the State of New York and the County of Oswego. (Id. ¶ 15.)

Yamaha began selling the Rhino within the United States in or around 2003. (Id. ¶ 21.) Plaintiffs allege that, due to inherent defects in the Rhino's design, including

having a narrow track width, high platform, high center of gravity and wheels too small to maintain vehicle stability, the Rhino is excessively prone to tip over while being operated, even at low speeds. (*Id.* ¶ 22.) According to plaintiffs, when the Rhino does tip over, its unpadded, heavy steal roll cage, outlining both occupant compartments, can itself become very dangerous to vehicle occupants, causing severe crushing injuries and even death. (*Id.* ¶ 25.) Plaintiffs maintain that the Rhino's design and construction is in spite of the availability of safer design alternatives and vehicle testing methods that can reduce operator and occupant morbidity and mortality. (*Id.* ¶ 26.) Further, plaintiffs claim that the Rhino was never designed for use on all terrain, despite Yamaha's advertisement's encouraging consumers to drive the Rhino on and off road. (*Id.* ¶ 27.)

Plaintiffs allege that Yamaha knew, or should have known "as a leading manufacturer in the industry," of the Rhino's design defects during the time it marketed and sold Rhinos in the United States. (*Id.* ¶ 30.) It is plaintiffs' contention that had Yamaha "properly tested, considered and analyzed the safety hazards associated with the Rhino, it would have had specific knowledge of the Rhino's defects long before it put the Rhino into the stream of commerce." (*Id.* ¶ 33.)

Further, plaintiffs claim that since 2003, when the Rhino was first introduced to the market, Yamaha has been on notice of the Rhino's design defects because it received reports and consumer complaints about the Rhino's propensity to tip over, even when being driven at low speeds. (*Id.* ¶¶ 28, 38.) As these accumulating complaints were indicative of the Rhino's defects and a substantial product hazard, the plaintiffs allege that Yamaha was obligated, but failed, to report these complaints to the Consumer Product Safety Commission under the Consumer Product Safety Act. (*Id.* ¶ 40.) Instead of reporting the high incidence of Rhino tip-over accidents, Yamaha "continued to conceal material information about the Rhino's defects from the consuming public, including the plaintiffs." (*Id.* ¶ 44.)

Plaintiffs contend that, despite being on notice of the serious and dangerous defects in the Rhino's design, Yamaha did not take adequate steps to cure the hazard and protect consumer safety in the United States.[1] In September 2006, Yamaha sent a letter to some of the registered owners of Rhinos, discussing the vehicle's propensity to tip over. According to plaintiffs, however, this letter did not reach all Rhino owners, including the plaintiffs in this lawsuit. (*Id.* ¶ 46.) In July 2007, Yamaha updated the Rhino 2007 Owners' Manual. (*Id.* ¶ 47.) On August 27, 2007, Yamaha sent another letter to some of the registered Rhino, which mentioned a "special offer" for Rhino owners that included installation of doors and handholds on all 2004 to 2007 Rhinos. Yamaha allegedly recommended the installation of these new features to enhance occupant safety in the event of a vehicle roll over. (*Id.* ¶ 50.) Plaintiffs claim many Rhino users never received this letter and many of those who did who attempted to obtain the door or handhold installation were told by Yamaha that supplies were backordered. (*Id.* ¶ 49.) The plaintiffs in this lawsuit did not receive the August 27, 2007 letter or the information contained therein until after

---

1. Plaintiffs allege that after the president of Yamaha France, Jean–Claude Olivier, was injured by a Rhino when it tipped over and crushed one or both of his legs, all Rhinos sold in France were equipped with design features to prevent ejection of the occupant or the occupant's limbs in the event of a tip over event, but that such changes were not implemented to Rhinos sold in the United States. (Compl. ¶ 42–44.)

they were injured by their accidents in the Rhino. (*Id.* ¶ 51.)

Finally, plaintiffs claim that "Since 2003, Yamaha has misled the government, the public, and consumers about the safety of the Yamaha Rhino" and that "Had the users of the Yamaha Rhino, including plaintiffs, known the full extent of the risks and dangers associated with the use of the Yamaha Rhino, including that they were not safe to operate even at low speeds and in flat areas, said users would never have used the Yamaha Rhino and received the injuries that they did." (*Id.* ¶ 53, 55.)

## DISCUSSION

### I. Yamaha's Motion to Dismiss the Claims of the Taber Plaintiffs for Improper Venue is Denied.

■ Yamaha argues that because the claims of the Taber plaintiffs arise out of an incident that took place in Oswego County, New York, a location within the jurisdiction of the United States District Court for the Northern District of New York, this Court should dismiss the Taber claims as improperly venued under 28 U.S.C. § 1406. (Def.'s Br. at 3.) However, under 28 U.S.C. § 1391(a)(1) an action may be properly brought in any judicial district "where any defendant resides." 28 U.S.C. § 1391(a)(1) (West 2008). Under Section 1391(c) "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (West 2008). Yamaha cannot, and indeed does not, dispute that it is a subject to personal jurisdiction in this district, as it is a corporation that transacts business in this district. Thus, venue is not improper under 28 U.S.C. § 1391. Yamaha's motion to dismiss the claims of the Taber plaintiffs on venue grounds is denied.

### II. Yamaha's Motion to Transfer the Claims of the Taber Plaintiffs to the United States District Court, Northern District of New York is Denied.

In the alternative, Yamaha argues that the Taber claims should be severed and transferred to the Northern District under 28 U.S.C. § 1404(a). Yamaha submits that many of the witnesses and physical evidence in the Taber case will be found in Oswego County, where the accident occurred, and therefore considerations of convenience weigh in favor of transferring the Taber claims to the Northern District of New York. (Def.'s Br. at 4.)

■ Although some of the witnesses and physical evidence in the Taber case may be found in Oswego County, there is also a considerable overlap between the witnesses and documentary proof in the Kehr and Taber cases, e.g. Yamaha's documents and witnesses will likely be identical. Further, while considerations of witness convenience and the location of physical evidence are relevant to whether a case may be transferred under Section 1404(a), they are not dispositive. *See Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619 (2d Cir.1968) ("Overriding, however, all that has been said is a consideration affecting the expeditious management of court business"). Plaintiffs have made to transfer and coordinate this case with actions pending in 34 district courts around the country under 28 U.S.C. § 1407 that is now pending before the Judicial Panel on Multidistrict Litigation. There is simply no sense in entangling yet another district court in litigation that may soon be transferred to a yet-to-be-determined MDL venue. Based on the totality of the circumstances, both discovery and trial efficiency would be better

served by this Court's retaining jurisdiction over the Taber claims.

### III. Yamaha's Motion to Sever the Claims of the Taber Plaintiffs Pursuant to Fed.R.Civ.P. Rule 20 and Rule 21 is Denied.

Yamaha argues that the claims of Grover and Shirley Taber were improperly joined in this action under Fed.R.Civ.P. 20 and moves for their severance under Fed. R.Civ.P. 21. (Def.'s Br. at 5–6.)

Rule 20(a) permits the joinder of multiple plaintiffs if: (1) "they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences" and (2) "if any questions of law or fact common to all these persons will arise in the action." Fed.R.Civ.P. 20(a). "The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1421 (S.D.N.Y.1989).

■ Pursuant to Rule 21, "Any claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21. The decision of whether to sever a claim is left to the discretion of the trial court. *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir.1988). However, "Federal courts view severance as a procedural device to be employed only in exceptional circumstances." *Laureano v. Goord*, No. 06cv7845, 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007) (internal quotation marks omitted). In considering a severance motion, a trial court will consider the two requirements of Rule 20 and additional factors, including: (1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and

evidence. *See, e.g., Laureano*, 2007 WL 2826649, at *8; *Boston Post Road Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03cv3923, 2004 WL 1586429, at *1 (S.D.N.Y. July 15, 2004); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003).

#### A. Plaintiffs' Claims Arise out of the Same "Transaction or Occurrence" under Rule 20.

■ What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis. 7 C. Wright and A. Miller Federal Practice and Procedure § 1653 at 270 (1972). The interpretation of the terms "transactions or occurrences" as applied to the context of Rule 13(a) counterclaims offers guidance to the application of those terms under Rule 20. *Blesedell*, 708 F.Supp. at 1421. Under Rule 13(a), "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Applying this reasoning to the terms used in Rule 20 "... would permit all 'logically related claims' by or against different parties to be tried in a single proceeding." *Blesedell*, 708 F.Supp. at 1421, *quoting Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974).

Yamaha urges this Court to sever the claims of the Taber plaintiffs, arguing that the Taber accident is an independent and unrelated event from the Kehr accident. (Def.'s Br. at 7.) Yamaha argues that because the two incidents alleged in the complaint involve distinct factual scenarios, including, *inter alia*, differing issues of the manner of operation, differing environ-

ments and differing resulting injuries, they are not the same "transaction or occurrence" for purposes of Rule 20. *Id.* Plaintiffs counter that their claims arise from common design defects in the Rhino and that although the two Rhinos involved in the accidents are different, plaintiffs allege that all Rhinos sold in the United States suffer from the same defects, regardless of model or year. (Pls.' Br. at 7.)

■ Plaintiffs have met their burden of demonstrating that their claims arise out of the same transaction or occurrence for purposes of Rule 20(a). The Second Circuit has specifically held that an allegation of a common design defect in automobiles satisfies the requirement of logically related transactions for the purposes of permissive joinder under Rule 20. *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 247 (2d Cir.1986). In *Abraham*, the Second Circuit considered a motion to sever 119 plaintiffs whose various cases arose from their use of Volkswagen "Rabbit" cars of model years 1975 to 1979. All the cars were all equipped with a faulty valve stem seal that had resulted from a design defect in the vehicle, but not all the cars exhibited the same defect and some models were more likely than others to break down sooner. 795 F.2d at 241, 251. The Second Circuit reversed the district court's conclusion that the plaintiffs could not be joined under Rule 20(a). *Id.* at 251. The Court found that the plaintiffs' allegation of "the faulty valve stem seal as a single defect that caused various damages, satisfied the same transaction or occurrence (or series thereof) requirement." *Id.*

Similarly, the plaintiffs in this case claim damages stemming from alleged design defects common to all Yamaha Rhinos on the market in the relevant time period. Both the Kehrs and the Tabers allege as a basis for their complaint an accident in a Rhino, which due to such design defects,

was unreasonably dangerous and prone to tip over. These allegations readily satisfy the requirement of a series of logically related transactions under Rule 20(a). *See* 7 C. Wright and A. Miller, Federal Practice and Procedure § 1653(1972).

### B. Plaintiffs' Claims Present Several Common Questions of Law and Fact.

At the core of both the Kehr and Taber claims is the question of whether the Yamaha Rhino's design was defective. Related to and correlated to that central question are numerous other questions common to both sets of plaintiffs, including: (1) whether Yamaha failed to adequately warn of the plaintiffs or the public of the dangers of the design defect, if one is found to exist; (2) Whether Yamaha failed to exercise ordinary care and breach their duty to purchasers of the Rhino; (3) Whether Yamaha intentionally concealed or failed to disclose the true nature of the problems with the Rhino for the purpose of inducing plaintiffs to purchase the product; and (4) Whether Yamaha is liable for its failure to comply with the reporting requirements of the Consumer Product Safety Act.

Yamaha argues that because the case involves two separate, unrelated accidents, with distinct factual patterns, that they cannot be joined under Rule 20(a). There is no requirement, however, that all questions of law and fact be *identical* in order for there to be permissive joinder under Rule 20(a). Indeed, the Rule provides for joinder as long as there is *any* question or fact common to all. *Blesedell*, 708 F.Supp. at 1421. The interpretation of Rule 20(a) urged by Yamaha is unworkably narrow and completely subverts the goals of judicial economy and efficiency underlying the Rule. *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Under

the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.")

### C. Joinder in this Case Facilitates Judicial Economy and Efficiency.

Proceeding with the Kehr and Taber claims as a single case would no doubt promote judicial economy and efficiency as it is anticipated that much of the discovery and depositions will be identical for both plaintiffs. It is also uncontested that there will be overlap between the witnesses and documentary proof used at trial. Further, as discussed *supra*, a motion has been made by plaintiffs in this case for consolidation and transfer of this case under 28 U.S.C. § 1407. It would surely be a waste of judicial resources to now sever the claims of these two plaintiffs into two separate cases, begin separate discovery and trial preparation and discovery, only to have both cases then transferred to an MDL judge.

### D. No Prejudice Will Result if Severance is Denied.

Yamaha's claim of prejudice amounts to an argument that if the claims of the Taber and Kehr plaintiffs are tried together that there is a likelihood of juror confusion. (Def.'s Br. at 9.) I do not find this to be argument to be credible. The core issue of whether the Rhino has a design defect, which causes it to tip over while being operated, will be the same for both plaintiffs. Further, I am unconvinced that jurors will be unable to separate the different fact patterns presented by the Kehr and Taber claims during trial or that trying the claims together will result in prejudice to either party.

### E. There is an Overlap of Witnesses and Documentary Proof in the Two Plaintiffs' Cases.

As discussed *supra*, it is anticipated that there will be significant overlap between both plaintiffs' discovery from Yamaha and their pretrial preparation. (*See, e.g.*, Pls.' Br. at 10.) Plaintiffs' submit that both the Kehr and Taber plaintiffs will require discovery from and possibly call as witnesses identical Yamaha employees. Severing the claims of the Kehr and Taber plaintiffs will force the duplication of efforts by the parties, counsel and this Court.

### IV. Plaintiffs' Motion to Dismiss or Strike Portions of the Plaintiffs Complaint is Denied.

Yamaha argues that plaintiffs' complaint should be dismissed in its entirety or portions of it stricken for failing to comply with the requirements of Rule 8. This argument is without merit.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), and that each allegation be "simple, concise and direct" Fed. R.Civ.P. 8(d)(1). The principal function of pleadings is to "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995) (*quoting Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)).

■■ A district court is empowered to dismiss a complaint, or strike such parts that are redundant or immaterial, for failing to comply with these requirements. "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42. This is not such a case. Plain-

tiffs' complaint meets the standards of Rule 8, in that it put Yamaha squarely on notice of the claims raised against them.

■ Additionally, Yamaha argues that portions of the complaint should be stricken under Rule 12(f) because they are overly narrative or contain generalized statements or matters of opinion. (Def.'s Br. at 12–13.) Under the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, motions to strike "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Burger v. Health Ins. Plan of Greater New York,* 684 F.Supp. 46, 52 (S.D.N.Y.1988) (internal quotation marks omitted). It is settled in this Circuit that the motion will be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) (internal citations omitted).

■ Yamaha argues that plaintiffs' statements, such as ones describing the Rhino as "enormously popular" or accusing Yamaha of "misleading" "thousands of innocent buyers and passengers" rise to the level of material that should be stricken under Rule 12(f). (Def.'s Br. at 11.) I disagree. Yamaha has failed to demonstrate that the contents of plaintiffs' complaint are either irrelevant or unsupported. Its motion to strike portions of the complaint under Rule 12(f) is denied.

## V. Plaintiffs' Sixth Cause of Action, for Violation of the Consumer Product Safety Act, is Dismissed.

In their Sixth Cause of Action, Plaintiffs claim that they are entitled to damages based on Yamaha's failure to comply with the reporting requirements of the Consumer Product Safety Act (the "CPSA"), 15 U.S.C. § 2064, and the corresponding reporting rules published by the Consumer Product Safety Commission (the "Commission"), found at 16 C.F.R. §§ 1115 and 1116. (Compl. ¶¶ 108–09.) They allege that Yamaha violated the CPSA when it failed to report to the Commission that the two subject models of the Rhino created a "substantial product hazard." (*Id.* ¶ 108.) Plaintiffs claim that they are entitled to damages pursuant to 15 U.S.C. § 2072. (*Id.* ¶ 110.)

Yamaha moves to dismiss this cause of action, arguing that there is no private right of action for the failure to comply with reporting requirements of the CPSA. I agree.

Title 15 U.S.C. § 2064 provides, "Every manufacturer of a consumer product distributed in commerce" who obtains information which "reasonably supports the conclusion" that its product could create a "substantial product hazard" shall "immediately inform the Commission." 15 U.S.C. § 2064 (West 2008). The Commission promulgated corresponding rules found at 16 C.F.R. §§ 1115 and 1116, which interpret and implement a manufacturer's duty to disclose information concerning potentially hazardous products. 15 U.S.C. § 2072 of the CPSA provides, in part,

(a) Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained . . . .

15 U.S.C. § 2072 (West 2008).

■ As there is no private right of action for violation of the CPSA itself un-

der Section 2064, the relevant inquiry is whether under Section 2072 a private litigant may bring suit for violation of the Commission's reporting rules found at 16 C.F.R. §§ 1115 and 1116. The decisions on whether such a private right of action exists have not been uniform. However, the weight of authority supports Yamaha's position. *See, e.g., Drake v. Honeywell, Inc.*, 797 F.2d 603 (8th Cir.1986); *Kloepfer v. Honda Motor Corp., Ltd.*, 898 F.2d 1452, 1457–58 (10th Cir.1990); *Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 35 (1st Cir.1988); *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936, 940–44 (7th Cir.1988); *Klingler v. Yamaha Motor Corp., U.S.A.*, 738 F.Supp. 898, 907 (E.D.Pa.1990); *O'Connor v. Kawasaki Motors Corp.*, 699 F.Supp. 1538, 1545 (S.D.Fla.1988); *Newlin v. Invensys Climate Control, et al.*, No. 05–5746, 2006 WL 2385079 at *7 (D.N.J. August 16, 2006); *Crouse v. Kawasaki Heavy Indus. Ltd.*, 716 F.Supp. 723, 724–26 (N.D.N.Y.1989).

In *Drake v. Honeywell, Inc.*, the Eighth Circuit concluded that in enacting the CPSA, Congress did not intend to create a private right of action to enforce the Commission's reporting rules under Section 2072. 797 F.2d at 603. Despite the fact that a reporting rule would appear, based on plain language, to fall under Section 2072, as either "consumer product safety rule, or any other rule or order issued by the Commission," such an interpretation would effectively frustrate Congress's clear intention not to provide a private cause of action to those injured from a violation of the statute itself. *Id.* at 606. Additionally, the court based its decision on the fact that Commission's reporting rules were "not enacted pursuant to an explicit statutory delegation of lawmaking power", but are instead interpretive rules which "merely present the Commission's interpretation of the statute, but are not themselves law." *Id.* at 607–08. There-

fore, any claim of a violation of the reporting rules amounts to a claim of a violation of the CPSA itself as the rules are "derivative" of the CPSA. *Id.* at 609. Since "Congress made clear, however, that no private action may flow from a violation of the Act," an action under the reporting rule would again actually be an impermissible claim under the CPSA itself. *Id.* at 609. Finally, a review of the legislative history of Section 23(a) persuaded the *Drake* court that congress did not intend to permit a private enforcement of the Commission's reporting rules. *Id.* at 609.

Since *Drake*, few courts have permitted private litigants to bring suit to enforce the reporting requirements under the CPSA. *See, e.g., Newlin*, 2006 WL 2385079 at *7; *Klingler*, 738 F.Supp. at 901 ("Although some courts have upheld a private cause of action, almost every court since *Drake* has held otherwise.") The Northern District of New York cases cited by plaintiffs, which hold that a private right of action does exist, appear to go against the weight of authority following *Drake*. Indeed, there is even inconsistency within the Northern District concerning whether a private litigant may sue to enforce the Commission's reporting rules. *See Crouse*, 716 F.Supp. at 726 (adopting the reasoning in *Drake* to hold that no private cause of action may be brought for alleged failure to comply with the CPSA).

In short, in light of *Drake* and the cases decided in its wake, I am not persuaded that plaintiffs may institute a private cause of action to enforce the Commission's reporting rules under the CPSA. Yamaha's motion to dismiss plaintiffs' Sixth Cause of Action is therefore granted.

### CONCLUSION

Yamaha's motion to dismiss, transfer or sever the claims of the Taber plaintiffs is denied.

Yamaha's motion to dismiss or strike certain portions of the complaint is denied.

Yamaha's motion to dismiss plaintiff's Sixth Cause of Action is granted.

This constitutes the decision and order of this court.