John AGNESINI and Terrie Moody, Plaintiffs,

v.

DOCTOR'S ASSOCIATES, INC., Defendant.

No. 10 Civ. 9190 (BSJ)(FM).

United States District Court, S.D. New York.

Aug. 8, 2011.

Yetta G. Kurland, Kurland, Bonica & Associates, PC, New York, NY, for Plaintiffs.

Nicholas P. Calabria, Churbuck Calabria Jones & Materazo, P.C., Hicksville, NY, for Defendant.

### MEMORANDUM DECISION AND ORDER *

FRANK MAAS, United States Magistrate Judge.

This diversity action arises out of two incidents in which customers at Subway Restaurants in New York and North Carolina discovered seven-inch serrated knives baked into the bread of their sandwiches. Plaintiffs John Agnesini ("Agnesini") and Terrie Moody ("Moody") (together, the "Plaintiffs") bring claims for negligence, strict products liability, breach of implied and express warranties, and negligent supervision and training against defendant Doctor's Associates, Inc. ("DAI"), the franchisor of Subway Restaurants. DAI has moved to sever Moody's claims from Agnesini's claims pursuant to Rule 21 of the Federal Rules of Civil Procedure. For the reasons set forth below, that motion is denied.

### I. Background

#### A. Facts

The following facts taken from the Complaint are presumed to be true.

DAI is a Florida corporation with its principal place of business in Connecticut. (ECF No. 1 ("Compl.") ¶¶ 2, 6). Agnesini is a

---

* This Memorandum Decision and Order was prepared with the assistance of Erika Mayo, a student at Hastings College of the Law.

citizen of New York. (*Id.* ¶¶ 2, 4). Moody is a citizen of North Carolina. (*Id.* ¶¶ 2, 5).

On June 27, 2008, Agnesini purchased a sandwich from a Subway franchisee located at 224 West 35th Street in Manhattan. (*Id.* ¶¶ 13–14). After Agnesini began eating the sandwich, "he felt something hard on the bottom of the sandwich, turned it over, and discovered that an approximately [seven-inch] knife with a serrated metal blade and plastic handle had been baked inside the bread." (*Id.* ¶ 17). Agnesini later "developed severe stomach pain and diarrhea" due to "toxins from the plastic [that had] melted into the bread." (*Id.* ¶ 18).

Nearly six months later, on December 18, 2008, Moody discovered that a seven-inch knife with a serrated metal blade and plastic handle had been baked into the bread of a sandwich that she purchased from a Subway franchisee in Goldsboro, North Carolina. (*Id.* ¶¶ 19–23). Unlike Agnesini, Moody discovered the knife by biting into it. (*Id.* ¶ 22).

### B. *Procedural History*

■ The Plaintiffs filed this lawsuit on December 9, 2010. (ECF No. 1). On February 9, 2011, the case was referred to me for general pretrial supervision. (ECF No. 5). After DAI filed its motion to sever, (ECF No. 6), the parties consented to my exercise of jurisdiction over that motion and a potential related motion on February 17, 2011.[1] (ECF No. 10). The Plaintiffs filed their papers in opposition to the severance motion on February 28, 2011, and DAI filed reply papers on March 14, 2011. (ECF Nos. 11, 13). The motion to sever therefore is fully submitted.

## II. *Discussion*

■ Rule 21 provides that a court "may at any time, on just terms, add or drop a party. The court may also sever any claim

against a party." Fed.R.Civ.P. 21. The Rule thus gives courts "broad discretion ... to sever parties or claims from the action." *Deskovic v. City of Peekskill,* 673 F.Supp.2d 154, 159–60 (S.D.N.Y.2009). "Courts have cautioned, however, that severance is a procedural device to be employed only in exceptional circumstances." *Id.* at 160 (brackets and internal quotation marks omitted). The moving party bears the burden of demonstrating that "severance is required to avoid prejudice or confusion and to promote the ends of justice." *Bey v. City of N.Y.,* No. 99 Civ. 3873(LMM), 2009 WL 1911742, at *1 (S.D.N.Y. June 30, 2009) (citing *Lewis v. Triborough Bridge & Tunnel Auth.,* No. 97 Civ. 0607(PKL), 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000)).

■ In deciding a motion to sever, courts consider whether the plaintiffs have been joined properly under Rule 20(a)(1) of the Federal Rules. Joinder is proper under that rule if "(A) [the plaintiffs] assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed.R.Civ.P. 20(a)(1); *see Kehr v. Yamaha Motor Corp.,* 596 F.Supp.2d 821, 826 (S.D.N.Y.2008). Other relevant considerations include "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr,* 596 F.Supp.2d at 826.

### A. *Same Transaction or Occurrence*

■ "There is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20." *Vulcan Soc'y v. Fire Dep't of White Plains,* 82 F.R.D. 379, 387 (S.D.N.Y.1979).

---

1. During a telephone conference on February 14, 2011 ("Feb. 14 Conference"), DAI indicated that it might implead the New York and North Carolina franchisees. If so, it also was considering filing a motion to dismiss on the theory that diversity jurisdiction no longer existed. (*See* ECF No. 14 ("Tr.") at 8–9). Ultimately, DAI elected not to make that motion. This is scarcely surprising since "parties who are impleaded fall within the supplemental (formerly ancillary) jurisdiction of the federal courts provided for in Section 1367 of the Judicial Code and thus do not affect the court's original determination of whether diversity jurisdiction exists." 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3608 (3d ed. 2009).

Rather, "[w]hat will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr,* 596 F.Supp.2d at 826. In doing so, however, "[c]ourts within this Circuit repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims.'" *Barnhart v. Town of Parma,* 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (quoting *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1421 (S.D.N.Y.1989)).

DAI contends that the Plaintiffs' claims do not arise "out of the same transaction, occurrence, or series of transactions or occurrences" because the claims relate to events that occurred on different dates, in different states, and at different Subway franchises. (ECF No. 6–1 ("Def.'s Mem.") at 4). In DAI's view, the "only connection between the plaintiffs and [DAI] appears to be that the restaurants have a common franchisor, [DAI]." (*Id.* at 5). DAI argues that this connection is irrelevant because "the existence of a franchisor-franchisee relationship, ... without more, does not give rise to the franchisor's vicarious liability." (*Id.*). DAI further asserts that "[t]here is no logical relation between the claims of the plaintiffs because [DAI] is not in the chain of bread supply," inasmuch as DAI "does not prepare or supply, nor even contract for, the sandwich bread which is the subject of the instant litigation." (ECF No. 13 ("Reply") at 7–8, Ex. B (Aff. of Steven J. Lawrence, sworn to on March 10, 2011 ("Lawrence Aff."), ¶ 7)). Rather, the franchisees, acting collectively through a corporate entity known as Independent Purchasing Cooperative, Inc. ("IPC"), have contracted with a firm named Pennant Foods Company ("Pennant Foods"), to supply the franchisees with bread. (Lawrence Aff. ¶ 7; Reply Ex. C ("Supply Agreement")).

■ DAI misses the point. The issue is not whether DAI ultimately may be held liable for the Plaintiffs' injuries, but whether the Plaintiffs' claims are "logically related." In that regard, the exhibits annexed to DAI's own reply papers confirm that the allegedly defective bread in both incidents came from a common source—Pennant Foods. (*See* Lawrence Aff. ¶ 7 ("the franchisees, through

[IPC], have contracted directly with Pennant Foods Company to supply them with bread for the Subway sandwiches")). This evidence only bolsters the Plaintiffs' theory of the case, which is that the knives were placed into the bread at a single location and then distributed to the New York and North Carolina franchises. (Tr. 7–8 ("the bread that's used is manufactured at a Doctor's Associates facility not at the franchise's location ... the knife actually most likely originated from an outside source, namely, ... the factory in which the bread was produced and baked")). The common origin of the bread thus provides the "logical relationship" between the "factual backgrounds" giving rise to each claim, therefore satisfying the first prong of the Rule 20(a)(1) joinder analysis. *See Barnhart,* 252 F.R.D. at 160 (quoting *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979)).

### B. *Common Questions of Law or Fact*

■ DAI further contends that the Plaintiffs' claims lack common questions of law or fact. (*See* Def.'s Mem. at 5; Reply at 8–9). Contrary to that suggestion, one overarching question of law common to both Plaintiffs' claims is whether DAI, as a franchisor, may be held vicariously liable for their injuries, a topic that both the Plaintiffs and DAI address in their briefs. (*See* ECF No. 11 ("Pls.' Mem.") at 6–7; Def.'s Mem. at 5; Reply at 10–11). In order to answer that question, the parties necessarily will need to explore the nature of DAI's relationship with its franchisees to determine, as a factual matter, whether DAI "controls the day-to-day operations of the franchisee, and more specifically whether [DAI] exercises a considerable degree of control over the [bread] at issue in" this case. *See Toppel v. Marriott Int'l, Inc.,* No. 03 Civ. 3042(DAB), 2006 WL 2466247, at *6 (S.D.N.Y. Aug. 24, 2006) (quoting *Wu v. Dunkin' Donuts, Inc.,* 105 F.Supp.2d 83, 87 (E.D.N.Y.2000)). The notion that DAI's involvement may reach that level is supported by the Supply Agreement, which states that IPC may terminate its arrangement with Pennant if Pennant "loses its status as an approved [Subway s]upplier" or its bread failed to "conform to DAI specifications." (Supply Agreement ¶ 10). More-

over, during the Feb. 14 Conference, I directed that document discovery commence with respect to both incidents, staying only document discovery "unique to the North Carolina case" and the depositions of witnesses in North Carolina. (*See* Tr. 6–8). For these reasons, common questions of law and fact pervade the Plaintiffs' claims. The Plaintiffs therefore have satisfied both prongs of the Rule 20(a) joinder analysis.

### C. *Judicial Economy, Prejudice, and Witnesses and Evidence*

■ Turning to considerations of judicial economy, as the Plaintiffs correctly observe, severing Moody's claims from this action would be a colossal "waste of judicial resources." (Pls.' Mem. at 1). By now, the parties presumably have completed the document discovery that I previously directed. (*See* ECF No. 8 (ordering all fact discovery relating to Agnesini to be completed by June 30, 2011)). Little purpose would be served by burdening another court with an essentially identical case involving many of the same witnesses and evidence, particularly in light of the fact that this Court already is familiar with the facts of the case.

■ DAI contends that it would suffer an "undue burden" if it were required "to defend a cause of action arising out of an occurrence in North Carolina, in the Southern District of New York." (Def.'s Mem. at 5). The only "difficulties" that DAI claims it would endure if the action is not severed, however, are "retaining the services of a medical expert to examine [Moody] in North Carolina, who is [also] able to give testimony in New York" and deposing witnesses in North Carolina. (*Id.*). The first of these claimed impediments is readily cured. Having chosen New York as the forum for her claim, Moody can be required to come to New York for purposes of her medical examination, unless she is able to show that this would impose an "undue hardship." *See Mikulka v. Hamilton Beach Brands, Inc.*, No. 3:10–cv–588–J–32TEM, 2011 WL 2618886, at *1 (M.D.Fla. July 1, 2011). The second alleged problem also is overblown. Even if the North Carolina claim were to be severed, Moody might be able to call Agnesini as a trial witness in order to establish DAI's prior knowledge that knives baked into the bread of Subway sandwiches is a recurring problem about which DAI had notice. *See* Fed. R.Evid. 404(b). Indeed, the Plaintiffs represent that there have been "dozens" of such incidents over the years. (*See* Pls.' Mem. at 3). If so, DAI's counsel in New York or North Carolina would likely have to take out-of-state depositions even if the Plaintiffs' claims were to be severed. In any event, the mere prospect that DAI, which employs more than 1,000 people and oversees more than 32,000 franchises in 92 countries, (*see* www.subway.com/subwayroot/AboutSubway/subwayFaqs.aspx) (last visited Aug. 8, 2011), might have to take a deposition (or conduct a medical examination) in North Carolina hardly amounts to "exceptional circumstances" justifying severance. *See Deskovic*, 673 F.Supp.2d at 160.

Finally, by agreeing to proceed with discovery with respect to every aspect of the case not exclusively related to North Carolina, DAI has impliedly conceded that there is substantial overlap in the witnesses and evidence involved in both Plaintiffs' claims. (*See* Tr. 6–8). By hearing those claims in one forum, the Court also can ensure that the finder of fact does not reach inconsistent verdicts with respect to those claims. *See Lutz v. Buono*, No. 05 Civ. 4879(GAY), 2009 WL 3364032, at *1 (S.D.N.Y. Oct. 16, 2009) ("[G]iven the specific factual issues in this case, a joint trial is prudent in order to avoid the potential problem of inconsistent verdicts.").

In sum, considerations of judicial economy and possible prejudice also augur in favor of a joint trial.

### D. *Venue*

Finally, DAI contends that "the correct venue for the causes of action allege[d] by ... Moody is the U.S. District Court for the Eastern District of Carolina." (Def.'s Mem. at 5). To the extent that DAI argues that venue over Moody's claims does not lie in this District, DAI is mistaken. *See* 28 U.S.C. §§ 1391(a)(1) (when jurisdiction is based exclusively on diversity, venue is proper in "a judicial district where any defendant resides,

if all defendants reside in the same State"), 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). Since there does not appear to be any dispute that DAI is subject to personal jurisdiction in this District, venue here is proper.

Additionally, to the extent that DAI asserts that the Eastern District of North Carolina is a *more appropriate* venue in which to litigate Moody's claims and, thus, seeks to have her claims transferred there pursuant to 28 U.S.C. § 1404, the factors relevant to a transfer analysis, many of which have been discussed in the context of DAI's motion for a severance, weigh in favor of continuing this action in the Southern District of New York. *See Posven, C.A. v. Liberty Mut. Ins. Co.,* 303 F.Supp.2d 391, 404 (S.D.N.Y.2004) (discussing such factors as "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; [and] (4) the locus of the operative facts").

III. *Conclusion*

For the foregoing reasons, DAI's motion to sever, (ECF No. 6), is denied. The Court will hold a telephone conference on August 11, 2011, at 2 p.m., to discuss, *inter alia,* setting a schedule for the completion of discovery.

SO ORDERED.